Frances A. CUTLER, Plaintiff and
Respondent,

v.

Dale BOWEN, Defendant and Appellant.

No. 13554.

Supreme Court of Utah.

Dec. 5, 1975.

Merrill K. Davis, Salt Lake City, for defendant and appellant.

Don L. Bybee, of Bybee, Larsen, Blaylock & Cannon, Salt Lake City, for plaintiff and respondent.

## 1350

CROCKETT, Justice:

Plaintiff, alleging a partnership with defendant, sued to recover half of $10,000 paid by the Salt Lake City Redevelopment Agency as compensation for the disruption of their tavern business known as The Havana Club at the corner of Second South and West Temple Streets.[1] The district court made findings and entered judgment in favor of the plaintiff. Defendant appeals.

The Havana Club had been operated for some years at the location mentioned under a lease running to defendant Dale Bowen, who owned the equipment, furnishings and inventory. He did not himself work in operating the club. In June, 1968, he discussed with the plaintiff Frances Cutler, who had been working for him as a bartender, that she take over the management of the club. They arrived at an oral agreement which included these conditions: that the plaintiff was to have the authority and the responsibility for the entire active management and operation: to purchase the supplies, pay the bills, keep the books, to hire and fire employees; and do whatever else was necessary to run the business. As to compensation, the arrangement was for a down-the-middle split; each was to receive $100 per week, plus one half of the net profits.

The business was operated under this arrangement for four years, until the lessor's building was taken over by the Redevelopment Agency in 1972. Among other things, the Agency is authorized to pay the reasonable value for moving and related expenses of a business displaced under its program which meets certain eligibility requirements.[2] One of these is that it "cannot be relocated without a substantial loss of its existing patronage." It appears from the eligibility conditions and the manner of compensation that the payment is intended to compensate for loss of patronage and/or goodwill where the business is such that a move will necessarily result in that loss.[3] The provisions are obviously broader than mere reimbursement for moving expenses.[4] On the basis of the regulations it was ascertained that for such displacement the Havana Club should be entitled to the maximum allowable amount of $10,000. The parties made some effort to find a suitable new location for the Havana Club, but failing to do so, decided to terminate that business in April, 1972.

The dispute giving rise to this lawsuit arose because the defendant contended that he was the sole owner of the entire business; and that the plaintiff's status was merely that of an employee, so defendant was entitled to the whole $10,000. Whereas, plaintiff took the position that, conceding the defendant was the owner of the physical assets of the business as above stated, insofar as the going concern and goodwill value, as a partner in the business, she was entitled to one half of the relocation fund. In analyzing these opposing contentions we follow the traditional rule of viewing the evidence and all inferences that can reasonably be drawn therefrom in the light favorable to the findings made

---

1. Preparatory to construction of the special events and convention center complex known as The Salt Palace, the premises were acquired by the Salt Lake City Redevelopment Agency and its subsidiary, the Relocation Agency, under authority of the Neighborhood Development Act, U.C.A.1953 (1975 Supp.) 11–9–23.3 et seq.

2. Relocation Handbook, Chapter 6, Section 5.

3. The Relocation Handbook uses the language of the federal Uniform Relocation Assistance and Land Acquisition Act of 1970 with regard to payments for moving and related expenses

(42 U.S.C., Sec. 4622(c)). The Utah Relocation Assistance Act, U.C.A.1953, Sec. 57–12–1, et seq. was enacted in conformity with the Federal Act to provide for the administration of federal matching grants for relocation assistance.

4. See 24 C.F.R. 42.85; under the federal regulatory scheme, cash payments based on average net earnings of a business are considered appropriate only where payments for actual moving expenses do not adequately compensate for losses incurred by being forced to relocate.

and the conclusions drawn by the trial court.[5]

One of the primary matters to consider in determining whether a partnership exists is the nature of the contribution each party makes to the enterprise. It need not be in the form of tangible assets or capital, but, as is frequently done, one partner may make such a contribution, and this may be balanced by the other's performance of services and the shouldering of responsibility.

When parties join in an enterprise, it is usually in contemplation of success and making profits, and is often without much concern about who will bear losses. However, when they so engage in a venture for their mutual benefit or profit, that is generally held to be a partnership, in which the law imposes upon them both liability for debts or losses that may occur.[6] This basic principle of partnership law is set forth in our Uniform Partnership Act, Title 48 of U.C.A.1953:

Sec. 48–1–4. Rules for determining the existence of a partnership.—In determining whether a partnership exists these rules shall apply:

\* \* \* \* \* \*

(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

\* \* \* \* \* \*

(b) As wages of an employee or rent to a landlord.

On the question whether profits shared should be regarded simply as wages, it is important to consider the degree to which a party participates in the management of the enterprise and whether the relationship is such that the party shares generally in the potential profits or advantages and thus should be held responsible for losses or liability incurred therein. Section 48–1–12 of the Act provides that partners are:

(1) Jointly and severally for everything chargeable to the partnership under sections 48–1–10 and 48–1–11. [relates to torts and breach of trust].

(2) Jointly for all other debts and obligations of the partnership; . . . .

It is not shown here that any occasion arose where the plaintiff's responsibility for debts or other liabilities of the business was tested. However, throughout the four years in which she operated and managed the Club, apparently with competence and efficiency, it was her responsibility to see that all bills were paid, including the rental on the lease, employees' salaries, the costs of all purchases, licenses and other expenses of the business. During that time she saw the defendant Bowen only infrequently for the purpose of rendering an accounting and dividing the profits. It is further pertinent that the parties reported their income tax as a partnership.

Under the arrangement as shown and as found by the trial court, a good case can be made out that it was largely through the capability, experience, and efforts of the plaintiff that, in addition to the physical plant, there existed a separate asset in the value of the "going concern and goodwill" of the business, which was being lost by its displacement. On the basis of what has been said above, we see nothing to persuade us to disagree with the view taken by the trial court: that the plaintiff's involvement in this business was such that she would have been liable for any losses that might have occurred in its operation; and that, concomitantly, she was entitled to participate in any profits or advantages that inured to it.

Proceeding upon the foregoing premise as being correct, it does not redound to the defendant's advantage, nor to the plaintiff's disadvantage, that the defendant, ig-

---

5. *Hardy v. Hendrickson*, 27 Utah 2d 251, 495 P.2d 28.

6. *McBriety v. Phillips*, 180 Md. 569, 26 A.2d 400 (1942).

noring the plaintiff's rights, had two or three months prior to the termination of the Havana Club business, purchased another tavern known as the Apex Club. And the same can be said for any view taken, or any determination concerning the transaction, which the Department of Housing & Urban Development may or may not have made. The trial court properly regarded that agency's action as a proceeding for the purpose of determining eligibility,[7] and as neither binding nor persuasive upon the court as having any effect upon the plaintiff's rights.

■ The failure of the parties to find another suitable location, and the cessation of operation of the Havana Club, was properly regarded as a *termination of the partnership.* The rule governing the rights of the parties in such circumstances is that after all debts and liabilities of the partnership have been satisfied, each partner should be repaid his contributions thereto, and any remainder allocated as their interests appear.[8]

■ From the circumstances shown in evidence as discussed herein, there appears to be a reasonable basis for the trial court's view that, except for the physical assets, which belonged to the defendant and to which the plaintiff makes no claim, the further asset of the business: that is, the value of what is called going concern and goodwill belonged to the two of them as partners in the enterprise; and that when the business could not be relocated, the $10,000 should properly be regarded as compensation for the loss by the forced relocation (which turned out to be a termination) of the business; and that the partners having lost their respective equal shares in the going business operation, they should also share equally in the compensation for its loss. The defendant has

failed in his burden of persuading this court on appeal that the findings of fact of the trial court are not supported by evidence, or that the judgment is contrary to law.

Affirmed. Costs to plaintiff (respondent).

HENRIOD, C. J., and TUCKETT, J., concur.

ELLETT and MAUGHAN, JJ., dissent.

---

7. A business, to be eligible for compensation of the type in question, must not be part of a commercial enterprise having another establishment which is not being acquired for the project (Relocation Handbook, Chap. 6, Sec. 5, subparagraph 88.c(1)(b). This re-

quirement was designed to make chain stores ineligible for such compensation (1970 U.S. Code Cong.Admin.News, pp. 5856–7.)

8. Secs. 48–1–15(1) and 48–1–37, U.C.A.1953.