Richard Carl KNUTSON and Anna June Knutson, his wife, Plaintiffs and Respondents,

v.

Lawrence Albert LAUER and Grace Marie Lauer, Defendants and Appellants.

No. 16968.

Supreme Court of Utah.

March 10, 1981.

Ronald W. Thompson, Frank A. Allen, St. George, for defendants and appellants.

Jim R. Scarth, St. George, for plaintiffs and respondents.

HALL, Justice:

Plaintiffs and defendants were partners in a trailer park business in Orderville, Utah. Plaintiffs' action sought dissolution of the partnership and an accounting. Defendants counterclaimed, seeking repayment of capital advances, salary, and expenses incurred prior to distribution of the partnership assets. The District Court of Kane County, sitting without a jury, granted dissolution, ordered the sale of partnership property, and ordered the distribution of the proceeds of sale as follows:

(1) That all partnership debts and expenses be paid, including, but not limited to, commission and sale expenses.

(2) That the Defendants receive the first $3,793.58.

(3) That the Defendants receive $1,000.00 for the management of the business during the year 1979.

(4) That the remaining net income be divided equally among the partners.

(5) That the remaining proceeds and assets shall be divided fifty percent (50%) to the Plaintiff, Anna Jane [sic] Knutson (her husband Richard Carl Knutson having died before the trial), and fifty percent (50%) to the Defendants, Laurence [sic] Albert Lauer and Grace Marie Lauer.

Defendants appeal, contending that they were deprived of full repayment of capital advances, compensation for wages, and re-

imbursement of expenses incurred on behalf of the partnership.

The real property of the partnership was acquired in 1968, and the partnership agreement was reduced to writing by an instrument dated November 10, 1968. Defendants moved to the premises from California and initiated business operations in the spring of 1969. Plaintiffs remained in California until 1975, when they also moved to the premises. The record is silent as to the acquisition cost of the business property, but income tax returns in evidence reflect a basis for structures and personal property of approximately $10,000. Each set of partners contributed the sum of $13,250 to the partnership.

Plaintiff Anna June Knutson testified at trial that she had received an offer to purchase the partnership business and assets within a month prior to trial for $105,000. Defendant Lawrence Lauer testified that all debts were paid and that there was $1,200 cash on hand.

The partnership agreement provided that defendants were to operate the business and occupy the house on the premises. Business income was "to be used to defray operating costs and improve the property, plus provide partial wages for the Lauers." The total of the sums paid to defendants from 1969 through 1977 was $8,577.64. Similar sums were paid to plaintiffs for 1976 and 1977, totalling $1,480.14, but plaintiffs retained one check, uncashed, in the amount of $880.08.

It is not disputed that defendants advanced the sum of $9,347.17 for improvements to the premises. However, the trial court reduced that amount by 50 percent, the sum attributed to depreciation of the improvements as reflected by the partnership tax returns. The court also subtracted the sum of $880.08 therefrom, representing the uncashed check in possession of plaintiffs, and thus arrived at the net figure of $3,793.58, which it awarded to defendants in repayment of their contribution to the partnership property.

It was defendants' testimony at trial that the "partial wages" provision of the partnership agreement was placed therein in anticipation of the time when increased business profits or the profits from a sale of business assets would become available to fully compensate them for their services. However, the trial court declined to hear defendants' evidence of the reasonable value of their management services, over and above the "partial wages" provided by the partnership agreement, citing as its reason the lack of business profits with which to pay for said services.

The court further declined to receive defendants' proffered evidence of partnership expenses personally borne by them over the years in the operation of their Jeep vehicle. The court took the view that such expenditures did not constitute a "capital contribution," and in any event, the partners had no agreement for the reimbursement of such expenses.

In the absence of an agreement to the contrary, the rules for determining the rights and duties of partners and the rules for distribution of partnership assets upon dissolution are provided for by statute.[1] In the instant case, the partnership agreement is silent as to repayment of contributions to the partnership, as to remuneration for management services other than the payment of "partial wages," and as to reimbursement for partnership expenses personally advanced by the partners. Consequently, the partnership agreement is to be viewed in light of the aforementioned statutes.[2]

U.C.A., 1953, 48–1–15 provides, in pertinent part, as follows:

\* \* \* \* \* \*

(1) Each partner shall be repaid his contributions, whether by way of capital or advances to the partnership property, and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied; ....

1. See U.C.A., 1953, 48–1–15 and 48–1–37, respectively.

2. Id.

(2) The partnership must indemnify every partner in respect of payments made and personal liabilities reasonably incurred by him in the ordinary and proper conduct of its business, or for the preservation of its business or property.

\* \* \* \* \* \*

(6) No partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs.

U.C.A., 1953, 48-1-37 provides, in pertinent part, as follows:

\* \* \* \* \* \*

(1) The assets of the partnership are:
  (a) The partnership property.
  (b) The contributions of the partners necessary for the payment of all the liabilities specified in subdivision (2) of this section.
(2) The liabilities of the partnership shall rank in order of payment, as follows:
  (a) Those owing to creditors other than partners.
  (b) Those owing to partners other than for capital and profits.
  (c) Those owing to partners in respect of capital.
  (d) Those owing to partners in respect of profits.
(3) The assets shall be applied in the order of their declaration in subsection (1) of this section to the satisfaction of the liabilities.

No basis exists in the foregoing statutes for deducting depreciation from advances made for capital improvements, nor does the partnership agreement authorize any such deduction. Additionally, we are not aware of any case law or other authority that supports the reduction of a capital contribution for depreciation. In any event, to do so in this case produces an unjust result, for in light of what appears to be the considerable appreciation in value of the partnership assets, it is wholly unlikely that the current value of the improvements is less than their actual cost. We therefore hold that the defendants are entitled to repayment of the total sum advanced of $9,347.17.

We now turn to the issue raised as to entitlement to remuneration for acting in the partnership business. While it is generally true that a partner is not entitled to any remuneration for his services in the absence of an agreement by the partners to that effect,[3] such an agreement may be either express or implied.[4] Also, where the partnership agreement or a specific practice, acquiesced in by the partners, contemplates the payment of salary to one or more partners, but no amounts are specified, it may be presumed that the payment of reasonable compensation is intended.[5]

In this case, the partnership agreement expressly provided for the payment of "partial wages" from the income derived from the operation of the trailer park. Said language of the agreement readily gives rise to an implication that *full* compensation was contemplated, payable at such time funds were available therefor, whether from increased partnership profits or from the profits from the sale of partnership assets, and the defendants testified that such was the agreement of the partners. Thus, the question of compensation as contemplated by the partnership agreement, expressly or impliedly, was squarely presented. However, the trial court's refusal to hear defendants' evidence of the reasonable value of their services had the effect of foreclosing the issue since it then became unnecessary for the plaintiffs to meet the issue presented, and they offered no evidence on the point.

In its findings of fact, the court declared that there was no enforceable *written* agreement for additional compensation oth-

**3.** *Chambers v. Sims*, 13 Utah 2d 371, 374 P.2d 841 (1962), construing U.C.A., 1953, 48-1-15(6), supra.

**4.** *Keller v. Wixom*, 123 Utah 103, 255 P.2d 118 (1953).

**5.** *Chambers v. Sims*, supra.

er than the net income of the partnership. We deem the court to have erred in not determining whether an *implied* agreement existed to fully compensate the defendants out of the profits contemplated from the pending sale of partnership assets.

The final point raised on appeal pertains to the denial by the trial court of reimbursement for partnership expenses claimed to have been personally advanced by defendants.

The sums owing to partners constitute a liability of the partnership,[6] the payment of which takes priority over the liabilities to partners in respect to capital or profits.[7] Also, the partnership must indemnify every partner in respect of payments made and personal liabilities reasonably incurred by him in the ordinary and proper conduct of business, or for the preservation of property.[8]

In *Eardley v. Sammons*,[9] this Court espoused the foregoing principles and determined that it was error for the district court to distribute "profits" without first indemnifying each of the partners for their payments and advances on behalf of the partnership and without first repaying the sums owing in respect to capital.

In the instant case, the court erred in not receiving defendants' evidence of personal expenditures made on behalf of the partnership and in not determining the amount, if any, defendants are entitled to by way of reimbursement.

The judgment of the district court is modified so as to allow full repayment of the sum of $9,347.17 advanced by the defendants to the partnership property, and the case is remanded for further proceedings consistent with this opinion on the issues of compensation for services and reimbursement of expenses. Plaintiffs are, of course, entitled to the proceeds of the uncashed check in the amount of $880.08 issued in payment of their services.

No costs awarded.

6.  U.C.A., 1953, 48–1–37(2)(b), supra.

7.  U.C.A., 1953, 48–1–37(2)(c) and (d), supra.

MAUGHAN, C. J., and HOWE and OAKS, JJ., concur.

STEWART, J., concurs in the result.

8.  U.C.A., 1953, 48–1–15(2), supra.

9.  8 Utah 2d 159, 330 P.2d 122 (1958).