NUPETCO ASSOCIATES, a limited partnership, and Neuman C. Petty, Plaintiffs and Respondents,

v.

Lynn A. JENKINS, Defendant and Appellant,

and

SUGARHOUSE FINANCE, Plaintiff and Respondent,

v.

Lynn A. JENKINS, Defendant and Appellant.

No. 17564.

Supreme Court of Utah.

Sept. 14, 1983.

---

Thomas S. Taylor, Provo, for defendant and appellant.

Jane F. Harrison, Joseph J. Palmer, Salt Lake City, for plaintiffs and respondents.

DURHAM, Justice:

This appeal involves two cases which were consolidated and which arise out of transactions between the plaintiff Neuman C. Petty (hereafter "Petty") in his capacity as an individual and/or as a controller of a business entity, and the defendant Lynn A. Jenkins (hereafter "Jenkins"). Both parties appeal the decision of the trial court. We affirm in part, reverse in part, and remand this case for further proceedings consistent with this opinion.

On October 12, 1972, Jenkins, a licensed real estate broker, obtained from Jackson Construction Co. an option to purchase 10 acres of land located at approximately 2000 East and 7600 South in Salt Lake County (hereafter "10-acre parcel"). The option granted to Jenkins for a period of six months the exclusive right to purchase the 10-acre parcel for $60,000. At that time, the 10-acre parcel was zoned a Sand and Gravel S–1–G zone. On December 6, 1972, Jenkins submitted an application for a zoning amendment from a Sand and Gravel S–1–G zone to a Residential R–M zone, which was approved on April 12, 1973.

In January of 1973, Jenkins approached Petty with a proposal of combining for development the 10-acre parcel with the adjacent 26-acre parcel owned by Richland, Inc., a corporation controlled by Petty.[1] Like the 10-acre parcel, the 26-acre parcel was also an abandoned gravel pit and shared similar topography. Both Jenkins and Petty agreed that commercial development would be best and that commercial rezoning could be obtained more easily if one application for a zoning amendment was submitted for both parcels. After negotiations, Jenkins and Petty entered into a written agreement on January 24, 1973, which in pertinent part reads as follows:

Mr. Jenkins now has an option to purchase ten acres of land at approximately 7600 South and 2000 East, Salt Lake City, Utah from Jackson Construction Company, Inc.

Mr. Petty is interested in participating in the development of said land for the purpose of investment, profit and the zoning aid and development of approximately [26] acres adjacent and south of the said 10 acres, in which Mr. Petty has some control. However, except for the joint zoning application to be submitted, this agreement pertains only to the 10 acres and there is no involvement of the [26] acres agreed or implied.

WHEREAS, Mr. Petty will advance to Mr. Jenkins on signing of a formal written agreement $20,000.00 for Mr. Jenkins to use personally as he sees fit, and

WHEREAS, Mr. Jenkins agrees to transfer all his rights to the Option with Jackson Construction Company, Inc. to Mr. Petty, which he agrees to assume and pay within the limits of said Option, $60,-

---

1. Nupetco Associates, a limited partnership, owns 75% of the stock of Richland, Inc. The other 25% is owned by Petty's sister and brother-in-law. Petty is the general partner of Nupetco Associates and Petty's wife, children and grandchildren are limited partners.

000.00 plus 7% interest from 4–1–73, NOW THEREFORE IT IS AGREED

1. That Mr. Petty and Mr. Jenkins will proceed as soon as practical to obtain zoning on said properties and then to develop the 10 acres into commercial and/or high density housing developments.

2. Mr. Petty and Mr. Jenkins will proceed as soon as satisfactory zoning is obtained, to promote the properties in a profitable manner, and obtain sales and high quality leases. Mr. Jenkins shall be paid a competitive sales commission on the total leases he procures and properties he sells. Said commissions to be agreed upon in each individual instance before the deals are made.

3. From the developments made on the above mentioned properties Mr. Petty will receive back his investment of $80,000.00, plus any other sums expended in connection with the property, along with interest at 8½%. Then Mr. Petty and Mr. Jenkins will divide all profits pertaining to the developments, Mr. Petty receiving 75% and Mr. Jenkins receiving 25% thereof.

4. Mr. Petty agrees to use his financial statement and other resources available to him for the development of these properties.

THIS AGREEMENT is to be re-written and expanded, but covers the basic agreement between Lynn A. Jenkins and Neuman C. Petty.

On January 24, 1973, Jenkins assigned the option agreement to Petty and Petty delivered $20,000 to Jenkins. On April 6, 1973, Petty exercised the option and purchased the 10-acre parcel from Jackson Construction Co., which conveyed title to Petty by warranty deed.

Early in 1976, an application for a zoning amendment was submitted for both the 10-acre parcel and the 26-acre parcel. The application sought to change the zoning to a Commercial C–3 zone, and listed Petty as the applicant and Jenkins as the agent. The application was denied on April 27, 1976. In August of 1977, a second application for a zoning amendment was submitted for both parcels to change the zoning to a Commercial C–2 and a Residential R–M zone. Again, the application listed Petty as the applicant and Jenkins as the agent. This application was also denied.

On March 3, 1978, by a Uniform Real Estate Contract, Petty transferred the 10-acre parcel for the price of $130,000 to Nupetco Associates (hereafter "Nupetco"), a limited partnership in which Petty was and is the general partner. The contract was made specifically "[s]ubject to all of the terms of an agreement dated 24th January 1973 between Neuman C. Petty and Lynn Jenkins covering this property . . . ." Jenkins claims that he was never notified of, nor did he have any knowledge of, this contract.

In 1979, a third application for a zoning amendment was submitted for both parcels. This application listed Nupetco as the applicant and Neils E. Valentiner & Assoc., architects, as the agent. Nupetco hired Mr. Valentiner to prepare a site plan for a regional shopping center on the 36 acres. Jenkins did a substantial amount of work to assist in the preparation and presentation of this application. This application was also denied by the Salt Lake County Planning Commission. Nupetco appealed this denial to the Salt Lake County Board of Commissioners. To assist in the appeal, Jenkins prepared a rather lengthy and detailed study comprised of a "Brighton Mall Book" and a "Brighton Mall Support Manual." On August 9, 1979, the Salt Lake County Board of Commissioners approved the application, thereby establishing a Commercial C–2 zone for the 36 acres for development of a community shopping center.

Until August of 1979, Jenkins and Petty worked together in relative harmony in the pursuit of their common goal of obtaining a change of zoning. Since then, however, the parties have engaged in one dispute after another. On October 25, 1979, Petty filed suit against Jenkins requesting that the court (1) quiet title to the 10-acre parcel by declaring that Jenkins has no interest in it, (2) declare that the January 24, 1973 agree-

ment between Jenkins and Petty did not create a partnership and that no partnership does exist, and (3) declare that the January 24, 1973 agreement created a principal-agent relationship between Jenkins and Petty. Jenkins filed a counter claim requesting the court to declare that the January 24, 1973 agreement between Jenkins and Petty created a partnership and that Petty was in breach thereof. Sugarhouse Finance Co., of which Petty was the president, also filed suit against Jenkins for $9,000, plus interest, which was delinquent and owing on three promissory notes.[2] These two actions were consolidated for trial.

After a six-day trial, the trial court found, among other things, that:

(1) The Agreement of January 24, 1973, created a partnership between Petty and [Jenkins] and the partnership owns the 10-acre parcel.

(2) By the January 24, 1973 agreement, Petty agreed to pay [Jenkins] the reasonable value of [Jenkins'] services if [Jenkins] obtained rezoning of the [26]-acre parcel; the reasonable value thereof is $40,000.

(3) Petty and [Jenkins] disagree as to the method of, timing of and means of developing the 10 acres and as to managing the partnership affairs. Neither has confidence in the other. The stated desired objectives of the partnership have been frustrated and are now impossible to obtain. It is not reasonably practicable for the parties to carry on the partnership business because of the dissension between the partners.

Based on these findings, the trial court ordered a dissolution of the partnership and winding up of its affairs and, to that end, ordered that the 10-acre parcel be sold. Both Jenkins and Petty appeal that decision.

On appeal and cross-appeal, Jenkins and Petty advance several points of error by the trial court. Of the various claims of error asserted by the parties, the following issues arise: (1) Did the trial court err in finding that the actions of the parties and the January 24, 1973 agreement created a partnership between Jenkins and Petty? (2) Did the trial court err in finding that Jenkins was entitled to $40,000 under the January 24, 1973 agreement as the reasonable value of his services? (3) Did the trial court err in failing to find that neither Jenkins nor Petty breached or wrongfully terminated the January 24, 1973 agreement? (4) Did the trial court err in the manner in which it structured the dissolution of the "partnership" and the winding up of its affairs? We address these issues in the above order.

■ The first issue presented to this Court is whether the trial court erred in finding that the actions of the parties and the January 24, 1973 agreement created a partnership. The applicable standard of review is as follows:

On review, this Court is obliged to view the evidence and all inferences that may be drawn therefrom in a light most supportive of the findings of the trier of fact. The findings and judgment of the trial court will not be disturbed when they are based on substantial, competent, admissible evidence.

*Car Doctor, Inc. v. Belmont,* Utah, 635 P.2d 82, 83–84 (1981) (citations omitted). *See also Cutler v. Bowen,* Utah, 543 P.2d 1349 (1975).

The following uncontroverted facts support the trial court's finding of a partnership. Jenkins and Petty entered an agreement on January 24, 1973, which required them to work together in pursuit of a common goal, namely, to obtain a zoning change and to develop both the 10-acre parcel and the 26-acre parcel. Over a six-year period, Jenkins and Petty did in fact

**2.** During 1979, Sugarhouse Finance Co., of which Petty was the president, lent Jenkins $3,000 on each of three separate occasions, July 11th, August 13th, and September 13th. Each of the three promissory notes was se-

cured by "an assignment of an agreement between Neuman C. Petty and Lynn Jenkins involving 10 acres of land at 20th East and Bengall road."

work together in pursuit of their common goal. In addition, the 1973 agreement provided for a sharing of the profits derived from their joint efforts. *See* U.C.A., 1953, § 48–1–4(4) (stating that the receipt of a share of the profits of a business is prima facie evidence that he/she is a partner in the business).

The classification of the Jenkins-Petty project as a single undertaking rather than a continuous business transaction does not render the trial court's finding of a partnership erroneous:

> [T]here may be a partnership merely for the consummation of a single transaction, adventure or undertaking.

1 S. Rowley, *Rowley on Partnership* § 6.5, at 77 (2d ed. 1960) (citations omitted). *See also, e.g.,* 1 J. Barrett & E. Seago, *Partners and Partnerships Law and Taxation,* ch. 2, § 12, at 50 & ch. 3, § 35, at 159–67 (1952).[3] Thus, in viewing the evidence and all of the inferences that can reasonably be drawn therefrom in the light most favorable to the findings and conclusions of the trial court, we find that the trial court did not err in holding that there was a partnership between Jenkins and Petty.[4]

The second issue presented to this Court is whether the trial court erred in awarding Jenkins $40,000 under the January 24, 1973 agreement (hereafter "partnership agreement") as the reasonable value of his services for obtaining a change in zoning. Section 48–1–15(6) provides as follows:

> The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement *between them,* by the following rules:
>
> . . . .
>
> (6) *No partner is entitled to remuneration for acting in the partnership business*
>
> . . . .

U.C.A., 1953, § 48–1–15(6) (emphasis added). *See, e.g., Knutson v. Lauer,* Utah, 627 P.2d 66 (1981); *Corbet v. Corbet,* 24 Utah 2d 378, 472 P.2d 430 (1970) (construing U.C.A., 1953, § 48–1–15(6)). The partnership agreement does grant Jenkins "a competitive sales commission on the total leases he procures and properties he sells" after the property is developed. However, it does not contain a provision for payment to Jenkins for services rendered in obtaining a change in zoning to permit development. Thus, under Utah law, the award of $40,000 to Jenkins for services rendered in obtaining a zoning change was error and must be reversed.

The third issue presented to this Court is whether the trial court erred in failing to find that neither Jenkins nor Petty breached or wrongfully terminated the partnership agreement. The applicable standard of review has been set forth above. *See also, e.g., Abbott v. Christensen,* Utah, 660 P.2d 254 (1983); *Kinkella v. Baugh,* Utah, 660 P.2d 233 (1983). A review of the voluminous trial transcript and briefs of the parties shows that their contentions of the facts were widely conflicting and were accompanied by extravagant accusations of breach by the other party. The trial court found that:

> *Inc. v. Vandehey Development Co.,* 290 Or. 779, 784–86, 626 P.2d 1365, 1368 (1980); *MJB Investments v. Coxwell,* Wyo., 611 P.2d 438, 440 (1980). *Cf. Vern Shutte & Sons v. Broadbent,* 24 Utah 2d 415, 473 P.2d 885 (1970) (observing that a joint venture is in the nature of a partnership).

**3.** Such an association is generally denominated a joint venture. *See; e.g., Koesling v. Basamakis,* Utah, 539 P.2d 1043, 1045–46 (1975). However, any distinction between a joint venture and a partnership is irrelevant for purposes of this case, inasmuch as the relations among joint adventurers are mainly governed by partnership law. *See, e.g.,* 1 J. Barrett & E. Seago, *supra;* J. Crane, *supra;* H. Henn, *Agency, Partnership and Other Unincorporated Business Enterprises* Ch. XVI(D), at 279–80 (1972); 2 S. Rowley, *supra,* § 52.14, at 481–84. *See also, e.g., Dang v. F and S Land Development Corp.,* 62 Haw. 583, 618 P.2d 276, 280 (1980); *Polikoff v. Levy,* 132 Ill.App.2d 492, 498, 270 N.E.2d 540, 546 (1971); *Stone-Fox,*

**4.** Petty relies on *Millett v. Langston,* 8 Utah 2d 15, 327 P.2d 253 (1958) as supporting reversal of the trial court's finding of a partnership. However, unlike the Millett decision, the present case involves an explicit written contract which provides for a sharing of profits.

Petty and [Jenkins] disagree as to the method of, timing of and means of developing the 10 acres and as to managing the partnership affairs. Neither has confidence in the other. The stated desired objectives of the partnership have been frustrated and are now impossible to obtain. It is not reasonably practicable for the parties to carry on the partnership business because of the dissension between the partners.

Based on this finding, the trial court ordered the dissolution of the partnership. The trial court did not make a specific finding regarding the parties' claims of breach of the partnership agreement by the other party. However, the trial court did hold that:

All the remaining claims and causes of action and counterclaims of each of the parties are found to be not supported by the evidence.

This finding indicates the trial court's view that neither party had proved by a preponderance of the evidence that the other had breached the partnership agreement. The trial court's findings on this issue are supported by the record and we will not overturn them on appeal. *See, e.g., Hal Taylor Assoc. v. Unionamerica, Inc.,* Utah, 657 P.2d 743 (1982).

■ Finally, the fourth issue presented to this Court is whether the trial court erred in the manner in which it structured the dissolution and winding up of the partnership's affairs. The applicable standard of review is as follows:

While it is true that in equity cases this Court may review questions of both law and fact we are not bound to substitute our judgment for that of the trial court, and because of its advantaged position we give considerable deference to its findings and judgment.

*Ream v. Fitzen,* Utah, 581 P.2d 145, 147 (1978) (citations omitted). *See also, e.g., Dang v. Cox Corp.,* Utah, 655 P.2d 658 (1982); *Parks Enterprises, Inc. v. New Century Realty, Inc.,* Utah, 652 P.2d 918 (1982).

■ Jenkins claims that the trial court erred in failing to credit to his capital account the value of the option to purchase the 10-acre parcel. Our statutes provide that, subject to any agreement to the contrary, the rules for distribution in settling accounts between partners after dissolution require: (1) that each of the partners be returned to his/her status at the creation of the partnership by returning to each partner his/her capital contribution and (2) that any remaining assets of the partnership be distributed to the partners in the proportion to which he/she is entitled to profits under the partnership agreement. *See* U.C.A., 1953, § 48–1–37(2). In the Findings of Fact in the present case, the trial court did not determine, and we cannot ascertain from the record, whether the parties intended the option to be a capital contribution by Jenkins. Absent this determination, we cannot resolve the issue regarding the correctness of the trial court's method of dissolution. Thus, on remand, the trial court should determine whether the parties intended that the option be Jenkins' capital contribution and, if so, the trial court should also establish the value of the option and credit Jenkins' capital account for that amount, less the $20,000 advance that Jenkins has already received.

■ Jenkins also claims that the trial court erred in not approving a "sale" of a portion of the 10-acre parcel. While subject to a preliminary injunction restraining Jenkins from dealing with the 10-acre parcel, Jenkins sought and received an offer from Tracy Collins Bank & Trust (hereafter "Tracy Collins") to purchase one acre of the 10-acre parcel. The Tracy Collins' offer was subject to eight stipulations, one of which was that "the property is to be developed with the Brighton Regional Mall concept in mind. ...." Acceptance of that offer would have perpetuated the partnership by requiring the development of the 10-acre parcel, which would have been directly contrary to the dissolution and winding up of the affairs of the Jenkins-Petty partnership. Thus, the trial court did not err in refusing to approve the "sale" to Tracy Collins.

Jenkins' final claim is that the trial court erred in ordering that the 10-acre parcel be sold rather than partitioned. The trial court, retaining continuous jurisdiction, ordered that the 10-acre parcel be listed for sale for three months with a realtor chosen by Jenkins and Petty. If the property was not sold within the three-month listing period, the 10-acre parcel was to be sold in a manner similar to a sale of real property upon execution. Jenkins claims that such a forced judicial sale would bring an unrealistically and artificially low sales price. We recognize that a trial court is granted broad discretion in selecting the appropriate manner for the sale of the assets of a dissolving partnership. Thus, we uphold the trial court's method of disposition in the present case because it is reasonable. However, in light of the changes in the economy since the time of trial and the recognition that a judicial sale brings depressed prices, the trial court in its discretion *may* wish to consider, pursuant to its retention of jurisdiction, the possibility of partition as an alternative to a forced judicial sale if the property does not sell within the three-month listing period. *See generally* Annot., 77 A.L.R. 300 (1932) (recognizing the option of partitioning partnership real property).

We reverse the award to Jenkins for personal services and remand this case to the trial court for further proceedings consistent with this opinion. We affirm in all other respects. No costs awarded.

HALL, C.J., and OAKS, J., concur.

HOWE, Justice (concurring and dissenting):

I concur in the opinion of the Court except in that portion which remands the case to the trial court to "determine whether the parties intended that the option be Jenkins' capital contribution and if so . . . establish the value of the option and credit Jenkins' capital account for that amount" less, I suppose, the $20,000 advance that Jenkins has already received. As to that portion of the opinion, I dissent.

In the written agreement of the parties no mention is made of any amount Jenkins is to receive for his option other than the $20,000 then paid him. Yet he now claims that the option was worth $200,000 and seeks to have his capital account credited by the balance of $180,000. It is inconceivable that if that were the intent of the parties, they would not have fixed in their written agreement the value of the option and provided that Jenkins was entitled to payment or a capital credit of the unpaid amount. Certainly such a liability should have been couched in promissory terms and clearly expressed since it would have been one of the most important terms of the partnership agreement. It is unlikely that Jenkins, an experienced real estate broker, would have allowed a provision which he now claims is worth ten times to him what he received, to go unmentioned in the agreement. The parties carefully detailed what each was to receive. Jenkins was to be paid $20,000 for the option, to receive commissions on sales and leases he made and to receive 25% of the profits of the development after Petty recouped his expenses. The majority is unwarranted in clearing the way for an additional amount to be paid to Jenkins. Jenkins' claim is wholly unsupported by the agreement.

It is further significant that the parties carefully detailed in the agreement that Petty would receive back his investment of $80,000 plus any other sums expended in connection with the property, along with interest at 8½%. Further, they fixed definitely when such payment to Petty would be made. If it was their intent that Jenkins should have been entitled to something more for his option, certainly that amount would also have been made payable at the same time as Petty's or at some other specific time. The omission from the agreement of any provision for or terms of further payment to Jenkins is obvious and glaring. The majority now seeks to allow the agreement of the parties to be rewritten and perhaps allow further payment for Jenkins to be provided when the parties themselves neither agreed to it nor saw fit to mention it.

The majority carefully follows the written agreement of the parties in its denial of compensation to Jenkins for his services. It correctly notes that the agreement "does not contain a provision for payment to Jenkins for services rendered in obtaining a change in zoning to permit development." With that conclusion I agree. However, the majority then turns away from the agreement and reaches out for an avenue through which Jenkins can possibly recover a much larger amount by way of capital contribution when that subject, too, is not mentioned in the agreement.

The majority opinion also errs in directing the trial court on remand to establish the value of the option. If it is the theory of the majority opinion that Jenkins may have contributed the option to the partnership, then the value of the option is immaterial since the parties could place any value upon it which they desired for the purposes of their partnership. Thus, under the majority's theory, the inquiry on remand should not be: What was the value of the option? Instead, the inquiry should be: What did the parties agree was its value for the purposes of their partnership? In this case, however, such an inquiry will be futile since the parties did not agree on any value of the option and had no reason to be concerned about that subject because there was no agreement that Jenkins was to receive anything further than the $20,000.

STEWART, J., concurs in the concurring and dissenting opinion of HOWE, J.