2006 UT App 165

**Hassan MARDANLOU, Plaintiff, Appellee, and Cross-appellant,**

v.

**Ali GHAFFARIAN, individually; Nasrin Faezi–Ghaffarian, individually; Ali Ghaffarian and Nasrin Faezi–Ghaffarian dba Access Auto, Defendants, Appellants, and Cross-appellees.**

No. 20040897–CA.

Court of Appeals of Utah.

April 27, 2006.

Mark L. Callister and James D. Gilson, Callister Nebeker & McCullough, Salt Lake City, for Appellants.

J. Kent Holland and Jonathon W. Grimes, Salt Lake City, for Appellee.

Before BENCH, P.J., GREENWOOD, Associate P.J., and THORNE, Jr., J.

## OPINION

THORNE, Jr., Judge:

¶ 1 Ali Ghaffarian and Nasrin Faezi–Ghaffarian, as individuals and dba Access Auto (collectively Ghaffarian), appeal from the trial court's finding of an oral partnership agreement between Ghaffarian and appellee Hassan Mardanlou and from the trial court's award of damages to Mardanlou. We affirm.

## BACKGROUND

¶ 2 On November 5, 1991, M & M Motors, Inc. and Access Auto, Inc., owned by Mardanlou and Ghaffarian respectively, executed a lease agreement to rent property located at 3960 South State Street in Salt Lake City, Utah. The lease agreement was for a one-year term, with an option to renew the lease for one additional year and an option to purchase the property at the end of the lease term. After the parties signed the lease, Ghaffarian shook hands with Mardanlou and said "we are in this together, partner." Shortly thereafter, Ghaffarian added Mardanlou to Access Auto's insurance policy so that it listed both Mardanlou and Ghaffarian as insureds.

¶ 3 Mardanlou purchased business cards for Access Auto with his and Ghaffarian's names equally placed on the cards. Mardanlou purchased furniture used by Access Auto, while Ghaffarian paid $6,000 for the first and last month's rent on the leased property. There was a division of labor between Mardanlou and Ghaffarian, with Ghaffarian in charge of the bookkeeping as well as purchasing vehicles to sell at Access Auto. Mardanlou sold vehicles and managed the other sales associates. At no time did Mardanlou have access to Access Auto's books or any of the financial aspects of the business, although he did write checks on Access Auto's account.

¶ 4 Mardanlou worked at Access Auto from 1992 through 1997, receiving a salary while the other sales personnel in the office were paid on commission. Mardanlou was not aware of how much Ghaffarian was paid or received as income from the business. In March 1993, Ghaffarian gave Mardanlou $10,000 that Mardanlou believed was his share of the profits of Access Auto. Although Mardanlou was not in charge of paying employees, he did pay the salaries for two of Access Auto's employees on one occasion.

¶ 5 In November 1993, Ghaffarian unilaterally exercised the option to purchase the property contained in the lease, placing the property in his own name. However, Ghaffarian made the mortgage payments on the property with proceeds from the business, Access Auto. Ghaffarian did not inform Mardanlou of his actions and Mardanlou did not discover the purchase until late 1994 or early 1995. Hashem Farr, Ghaffarian's good friend, was present when Mardanlou confronted Ghaffarian regarding the purchase. Farr heard Ghaffarian tell Mardanlou, "Don't worry, we're partners."

¶ 6 From 1991 to 1997, Ghaffarian filed the tax returns for Access Auto in his name only. Although Mardanlou repeatedly approached Ghaffarian about the need for partnership tax statements, Ghaffarian failed to prepare

any such statements. Mardanlou filed his tax returns for those years as an employee of Access Auto. In 1997, Mardanlou left Access Auto. In November 1998, he initiated this action requesting a share of the profits based upon the dissolution of the partnership.

¶ 7 The trial court determined that Ghaffarian and Mardanlou had entered a partnership agreement by the time they executed the initial lease agreement. The court also found that Ghaffarian had appropriated the partnership's real property by placing it solely in his name. As a result, the court awarded Mardanlou a one-half interest in the real property of Access Auto, subject to various offsets. Further, the court ordered Ghaffarian to pay Mardanlou one-half of the $83,500 annual rental value of the property, plus interest, from November 7, 1997, to the date of final judgment. Ghaffarian appeals.

## ISSUES AND STANDARD OF REVIEW

 ¶ 8 Ghaffarian challenges the trial court's finding that Mardanlou and Ghaffarian intended to create a partnership.

> "On review, [an appellate court] is obliged to view the evidence and all inferences that may be drawn therefrom in a light most supportive of the findings of the trier of fact. The findings and judgment of the trial court will not be disturbed when they are based on substantial, competent, admissible evidence."

*Nupetco Assocs. v. Jenkins,* 669 P.2d 877, 881 (Utah 1983) (quoting *Car Doctor, Inc. v. Belmont,* 635 P.2d 82, 83–84 (Utah 1981)); *see also Cutler v. Bowen,* 543 P.2d 1349, 1350–51 (Utah 1975). Further, Ghaffarian contends that the trial court's partnership finding was erroneous, as a matter of law, because the trial court did not specifically find profit sharing and mutual control. "Questions about the legal adequacy of findings of fact and the legal accuracy of the trial court's statements present issues of law, which we review for correctness, according no deference to the trial court." *Shar's Cars, L.L.C. v. Elder,* 2004 UT App 258,¶ 12, 97 P.3d 724 (quotations and citation omitted).

 ¶ 9 Ghaffarian also argues that Mardanlou's claims are barred by a four-year statute of limitations. *See* Utah Code Ann. § 78–12–25 (2002). " 'The applicability of a statute of limitations and the applicability of the discovery rule are questions of law, which we review for correctness.' " *Russell Packard Dev. Inc. v. Carson,* 2005 UT 14,¶ 18, 108 P.3d 741 (quoting *Spears v. Warr,* 2002 UT 24,¶ 32, 44 P.3d 742).

 ¶ 10 Finally, Ghaffarian argues that the trial court erred in awarding rental value and interest as part of its valuation of Mardanlou's partnership interest. *See* Utah Code Ann. § 48–1–39 (2002). " 'We review the trial court's decision to award damages under a standard which gives the court considerable discretion, and will not disturb its ruling absent an abuse of discretion.' " *Shar's Cars, L.L.C.,* 2004 UT App 258 at ¶ 13, 97 P.3d 724 (quoting *Lysenko v. Sawaya,* 1999 UT App 31,¶ 6, 973 P.2d 445).

## ANALYSIS

### I. Partnership Finding

 ¶ 11 Ghaffarian's first contention is that the trial court erred because "the undisputed facts establish that the relationship between Mr. Mardanlou and Mr. Ghaffarian did not satisfy the elements of a partnership." The "basic principle of partnership law is set forth in our Uniform Partnership Act, Title 48 of U.C.A.1953." *Cutler v. Bowen,* 543 P.2d 1349, 1351 (Utah 1975). " 'Partnership' is defined as 'an association of two or more persons to carry on a business for profit.' " *Parduhn v. Bennett,* 2002 UT 93,¶ 14, 61 P.3d 982 (emphasis omitted) (quoting Utah Code Ann. § 48–1–3 (1998)). The requirements for establishing the existence of a partnership

> are not exactly defined, but certain elements are essential: The parties must combine their property, money, effects, skill, labor and knowledge. As a general rule, there must be a community of interest in the performance of the common purpose, a joint propriety interest in the subject matter, a mutual right to control, a right to share profits, and unless there is an agreement to the contrary, a duty to

share in any losses which may be sustained.

*Bassett v. Baker,* 530 P.2d 1, 2 (Utah 1974).

¶ 12 In this case, the trial court determined that there were sufficient facts to demonstrate that the parties intended to create a partnership.[1] Specifically, the court's findings of fact stated that:

1. The lease/purchase agreement establishes that plaintiff [Hassan Mardanlou] and defendant Ali Ghaffarian entered into this agreement with lessor/seller Cline's Investments as either a partnership agreement or joint venture.

2. The insurance document contains both plaintiff and defendant Ali Ghaffarian as insureds under the policy inferring a partnership.

3. The insurance agent believed that the plaintiff and defendant Ali Ghaffarian were partners.

4. The Access Auto business cards contain both names equally on the card.

5. Defendant Ali Ghaffarian represented to his friend, Hashem Farr, that plaintiff and he were partners.

6. Hashem Farr was present when defendant Ali Ghaffarian was confronted by plaintiff regarding that the Access Auto real property was purchased only in defendant Ali Ghaffarian's name and Hashem Farr heard defendant Ali Ghaffarian state to plaintiff, "Don't worry, we're partners."

7. There was a division of labor between plaintiff and defendant Ali Ghaffarian.

8. Plaintiff purchased the furniture used in the business of Access Auto, indicating he viewed Access Auto, the business, as a partnership.

9. Plaintiff purchased the business cards for the business, indicating he viewed Access Auto, the business, as a partnership.

10. The salaries for two of Access Auto's employees were paid by plaintiff, indicating he viewed Access Auto, the business, as a partnership.

11. Defendant Ali Ghaffarian represented to plaintiff that he was the only other member of Access Auto besides plaintiff.

12. Defendant Ali Ghaffarian signed the doing business as Access Auto prior to the association of plaintiff in only his name.

13. Defendant Ali Ghaffarian filed the tax returns for Access Auto only in his name.

14. The mortgage on his property was paid for by the proceeds from the business, Access Auto, run by plaintiff and defendant Ali Ghaffarian.

¶ 13 Viewing these findings and all the inferences that can be drawn therefrom in the light most favorable to the trial court, we cannot say that the trial court's partnership determination was not supported by the evidence.

¶ 14 Ghaffarian has not pointed to a single factual finding that he believes was wrongly decided, instead arguing that the above facts do not support a finding of intent to create a partnership. We disagree. The trial court's findings, although not dispositive by any means, provide a sufficient basis upon which to infer that the parties intended to carry on a business for profit as co-owners. Thus, Ghaffarian's attack on the trial court's finding fails. *See Koesling v. Basamakis,* 539 P.2d 1043, 1046 (Utah 1975) ("Plaintiff produced evidence tending to prove the existence of a partnership. Defendant produced opposing evidence and further produced evidence which tended to prove a joint venture of the nature heretofore described. The trial court, exercising its prerogative as a trier of fact in a nonjury case, weighed the credibility of the witnesses, and was not persuaded by plaintiff's evidence. This court will not disturb such a determination when reasonable

---

**1.** Mardanlou argues that Ghaffarian did not fulfill his duty to marshal the evidence. *See Rappleye v. Rappleye,* 2004 UT App 290, ¶ 27, 99 P.3d 348 ("To challenge a trial court's findings of fact, '[t]he challenging party must marshal all relevant evidence presented at trial which tends to support the findings and demonstrate why the findings are clearly erroneous.'" (alteration in original) (quoting *West Valley City v. Majestic Inv. Co.,*

818 P.2d 1311, 1313 (Utah Ct.App.1991))), *cert. denied,* 106 P.3d 743 (Utah 2004). Here, the facts that Ghaffarian did marshal are sufficient to support the trial court's finding of intent to create a partnership, and we do not address whether the additional factual details identified by Mardanlou constitute evidence that Ghaffarian was required to present under the marshaling rule. *See id.*

men could differ as to the weight to be given to conflicting evidence.").

■ ¶ 15 Ghaffarian also challenges the trial court's legal determination of partnership in the absence of what he sees as two key elements: an express finding of shared control of Access Auto and an express finding of the sharing of profits. Contrary to Ghaffarian's assertions, Utah statutes governing partnerships do not set out any mandatory requirements for the finding of a partnership. *See* Utah Code Ann. § 48–1–1 to –40 (2002). Caselaw suggests that,

> [a]s a general rule, there must be a community of interest in the performance of the common purpose, a joint propriety interest in the subject matter, a mutual right to control, a right to share in the profits, and unless there is an agreement to the contrary, a duty to share in any losses which may be sustained.

*Bassett v. Baker*, 530 P.2d 1, 2 (Utah 1974).[2] But even this definition does not demand absolute proof of each factor in every case, indicating that the necessity of each factor will be based largely on the facts of the case. Similarly, the *Bassett* court did not demand proof that profits were actually shared, but only that there was a *right* to share in any profits.[3] *See id.*

■ ¶ 16 To the extent that profit sharing and control can be deemed requirements, the trial court did implicitly determine that these factors had been met by reaching the ultimate conclusion that "[a]s a matter of law, plaintiff and defendant Ali Ghaffarian were partners." In reviewing the record, we determine that there is enough evidence to support the trial court's partnership conclusion. The trial court specifically found that Mardanlou and Ghaffarian divided the labor between them and that Mardanlou contributed assets to the partnership. It appears that Mardanlou was in charge of the other salesman at Access Auto and the day-to-day operation of the business, thus illustrating mutual control of the business.[4]

¶ 17 Regarding profits, an agreement to share profits need not be formal and "may be proven by the actions taken by the parties." *Rogers v. M.O. Bitner Co.*, 738 P.2d 1029, 1032 (Utah 1987). In 1993, Mardanlou received a check for $10,000, which he claimed was his share of the profits. Given the lack of evidence to the contrary, we find that this $10,000 payment supports a finding of profit sharing. The fact that this is the only time Mardanlou received a large lump sum of money does not defeat his claim, as the partnership may have chosen not to distribute any profits for the remaining years and instead to invest any profits back into the business. Additionally, Ghaffarian never submitted any evidence to indicate that there were profits for the other years that were withheld from Mardanlou or that Ghaffarian was withdrawing additional profits himself. Mardanlou received ongoing payments each

---

2. The cases relied upon by both parties in making the profit-sharing argument deal specifically with joint ventures as opposed to partnerships. *See Bassett v. Baker*, 530 P.2d 1, 2 (Utah 1974); *Betenson v. Call Auto & Equip. Sales, Inc.*, 645 P.2d 684, 686 (Utah 1982). However, the supreme court has stated that "[j]oint venturers stand in the same relationship to each other as partners," and given that joint venturers are included in the partnership act, we assume for purposes of this matter that the same essential elements apply to both. *Rogers v. M.O. Bitner Co.*, 738 P.2d 1029, 1034 (Utah 1987); *see also* Utah Code Ann. § 48–1–3.1 (2002); *Nupetco Assocs. v. Jenkins*, 669 P.2d 877, 882 n. 3 (Utah 1983).

3. Utah Code section 48–1–4, which sets out the rules for determining the existence of a partnership, states that "[t]he receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business[.]"

Utah Code Ann. § 48–1–4(4) (2002). Thus, the statute does not require profit sharing, but simply states that profit sharing is prima facie proof of the existence of a partnership.

4. Mardanlou's lack of knowledge regarding the financial aspects of the business does not defeat his partnership claim given that partners can divide labor and responsibilities in any way they see fit, including giving one partner sole responsibility and control over the financial aspects of the business. *See Cutler v. Bowen*, 543 P.2d 1349, 1351 (Utah 1975) ("One of the primary matters to consider in determining whether a partnership exists is the nature of the contribution each party makes to the enterprise. It need not be in the form of tangible assets or capital, but, as is frequently done, one partner may make such a contribution, and this may be balanced by the other's performance of services and the shouldering of responsibility.").

month for his work in the partnership. Although Ghaffarian labeled these funds as a salary, they may instead have represented Mardanlou's share of the profits and the court did not have to accept Ghaffarian's characterization.[5]

¶ 18 We conclude that there was evidence to support the trial court's determination that a partnership existed, and therefore Ghaffarian's argument to the contrary fails.[6]

## II. Statute of Limitations

¶ 19 Ghaffarian argues that Mardanlou's claims fell outside the applicable statute of limitations period and were therefore barred. "As a general rule, a statute of limitations begins to run 'upon the happening of the last event necessary to complete the cause of action.' Once a statute has begun to run, a plaintiff must file his or her claim before the limitations period expires or the claim will be barred." *Russell Packard Dev., Inc. v. Carson,* 2005 UT 14,¶ 20, 108 P.3d 741 (quoting *Myers v. McDonald,* 635 P.2d 84, 86 (Utah 1981)). A contract "not founded upon an instrument in writing" may be brought within four years.[7] Utah Code Ann. § 78–12–25 (2002). "In certain instances, however, the discovery rule tolls the limitations period until facts forming the basis for the cause of action are discovered." *Spears v. Warr,* 2002 UT 24,¶ 33, 44 P.3d 742. The "equitable discovery rule may operate to toll an otherwise fixed statute of limitations period" in two situations:

(1) where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct, and

(2) where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action.

*Russell Packard Dev., Inc.,* 2005 UT 14 at ¶ 25, 108 P.3d 741 (quotations and citation omitted).

¶ 20 The trial court determined that Ghaffarian breached the oral partnership agreement when he "appropriated the partnership real property by placing it solely in his name." Ghaffarian exercised the option in November 1993, and the statute of limitations period on this claim would ordinarily have expired in November 1997. However, the limitations period did not begin to run until Mardanlou discovered that Ghaffarian had unilaterally exercised the option to purchase. *See Cheves v. Williams,* 1999 UT 86,¶ 22, 993 P.2d 191 (holding that statute of limitations did not bar partnership claim where the period does not begin to run until the party against whom the statute is asserted knows of the facts forming the basis for the cause of action). The record suggests that Mardanlou did not discover the details of the purchase until late 1994 or early 1995, pushing the limitations date to late 1998 or early 1999.

¶ 21 Regardless of the exact date of Mardanlou's discovery, the trial court found that, whenever Mardanlou discovered the purchase, he approached Ghaffarian and Ghaffarian specifically told him, "Don't worry, we're partners." Under the circumstances, a reasonable person in Mardanlou's position would be justified in concluding that Ghaffarian's statement indicated that they were in a part-

---

5. The mere fact that the amount given to Mardanlou each month may have been fixed does not defeat the possibility that the amounts represented ongoing profits. Partners may well elect to have a fixed monthly amount withdrawn each month from the profits and the rest to be contributed back into the partnership. *See Cutler,* 543 P.2d at 1351 ("On the question whether profits shared should be regarded simply as wages, it is important to consider the degree to which a party participates in the management of the enterprise and whether the relationship is such that the party shares generally in the potential profits or advantages[.]").

6. We note, on the state of the evidence in this matter, that had the trial court not been convinced of a partnership, we would likely have affirmed that result as well.

7. Mardanlou argues that the applicable statute of limitations is the seven-year statute for actions or defenses founded upon title to real estate. *See* Utah Code Ann. § 78–12–6 (2002). Mardanlou is incorrect. Real estate is simply the mechanism the court used to award damages in this case. The complaint, however, is founded upon the oral partnership contract the parties entered into at or before the signing the real estate agreement.

nership, and that the Access Auto property belonged to the partnership. Mardanlou's reliance on Ghaffarian's representation of a partnership tolled the statute of limitations until 1997, when it became clear to Mardanlou that Ghaffarian no longer recognized him as a partner. *See Charlesworth v. Reyns,* 2005 UT App 214,¶ 24, 113 P.3d 1031 ("[T]he equitable discovery rule operates to toll an otherwise fixed statute of limitations period ... where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct[.]" (quotations and citation omitted)). The complaint was filed on November 6, 1998, one year after Mardanlou discovered that Ghaffarian had misled him about the status of the partnership and the property ownership. Accordingly, Mardanlou filed his complaint within the statute of limitations period and Ghaffarian's argument on this point fails.

### III. Damages

■■■ ¶ 22 Finally, Ghaffarian argues that the district court erred in awarding post-dissolution rental damages. "In the absence of an agreement to the contrary ... the rules for distribution of partnership assets upon dissolution are provided for by statute." *Knutson v. Lauer,* 627 P.2d 66, 68 (Utah 1981). Utah Code section 48–1–39 allows a retiring partner to "choose between 'the value of his interest at the date of dissolution' or 'in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership.'" *Wanlass v. D Land Title,* 790 P.2d 568, 572 (Utah Ct.App.1990) (quoting Utah Code Ann. § 48–1–39 (1989)). This court "must affirm the award of damages if evidence in the record supports the award." *Shar's Cars,*

*L.L.C. v. Elder,* 2004 UT App 258,¶ 28, 97 P.3d 724. (quotations and citation omitted).

¶ 23 The trial court awarded Mardanlou a one-half interest in the property as of the date of dissolution, subject to set-offs,[8] plus one-half the annual rental value of the property until the date judgment was entered. Ghaffarian does not contest the property award, only the reasonable rental value award.[9] The trial court's award of rental value from 1997 to judgment was to compensate Mardanlou for his rights in the property during that time period. Mardanlou is entitled to compensation for Ghaffarian's continuing exclusive use of the property, and this award represented that compensation.

■■■ ¶ 24 Ghaffarian provided the court with no alternative evidence of profits for those years, no alternative way to compensate Mardanlou for the property use, and no evidence that the actual value of the use in the property was less. While there may be multiple ways to determine the appropriate damages award, the trial court's reliance on the reasonable rental value of the property, the major partnership asset, was appropriate. Because there is evidence in the record to support this award, we determine that the trial court did not exceed its permitted range of discretion in awarding reasonable rental value. *See Morgan v. Morgan,* 854 P.2d 559, 566 (Utah Ct.App.1993) (affirming the trial court's valuation of partnership property when the valuation was "'within the range of values established by all the evidence'" (alteration and citation omitted)).

### CONCLUSION

¶ 25 We affirm the trial court's finding of a partnership agreement because the evidence

8. Mardanlou argues that the district court erred in its determination that Ghaffarian was entitled to a set-off for the increased value of the property due to improvements he made after November 4, 1997. We disagree. "Each partner shall be repaid his contributions, whether by way of capital or advances to the partnership property, and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied[.]" Utah Code Ann. § 48–1–15(1) (2002). Ghaffarian is entitled to a set-off for his contributions in improving the partnership property, not to one-half of those contributions as Mardanlou implies. *See Knutson v.*

*Lauer,* 627 P.2d 66, 70 (Utah 1981) (modifying the judgment of the district court to allow full repayment of sums advanced by the defendants to the partnership property).

9. Ghaffarian's argument that Mardanlou is only entitled to the value of the property as of the date of dissolution is incorrect because "[o]n dissolution a partnership is not terminated, but continues until the winding up of partnership affairs is completed." Utah Code Ann. § 48–1–27 (2002); *see also Shar's Cars, L.L.C. v. Elder,* 2004 UT App 258,¶ 19, 97 P.3d 724.

and accompanying inferences, viewed in the light most favorable to the decision, support the partnership finding. Additionally, there is no statute of limitations bar in this case because Ghaffarian concealed his appropriation of the partnership property and confirmed the existence of a partnership with Mardanlou until 1997. Finally, the trial court's damage award is an appropriate remedy under the circumstances and will not be reversed on appeal. For the foregoing reasons, we affirm.

¶ 26 WE CONCUR: RUSSELL W. BENCH, Presiding Judge, and PAMELA T. GREENWOOD, Associate Presiding Judge.