2004 UT App 290

Marilyn RAPPLEYE nka Marilyn
Johnson, Petitioner and
Appellee,

v.

George RAPPLEYE, Respondent
and Appellant.

No. 20030074–CA.

Court of Appeals of Utah.

Sept. 2, 2004.

Stephen Quesenberry, J. Bryan Quesenberry, Hill Johnson & Schmutz, LC, Provo, for Appellant.

Matt C. Osborne, Osborne & Barnhill, Draper, for Appellee.

Before Judges BILLINGS, DAVIS, and ORME.

## OPINION

ORME, Judge:

¶1 George Rappleye appeals the trial court's decision that he fraudulently transferred property and that his ex-wife, Marilyn Johnson, could not reasonably have been on notice to inquire into this conveyance until long after the transfer, making her judgment collection efforts timely under the applicable statute of limitations. We affirm.

## BACKGROUND

¶2 Marilyn Johnson and George Rappleye were divorced in April of 1991. In May 1991, Rappleye filed a notice of appeal from the divorce decree and Johnson cross-appealed. Shortly thereafter, Rappleye married Linda Jean Hodges. On October 19, 1992, Rappleye and Hodges purchased thirty-three acres of real property located in Branson, Missouri (the Branson Property) for $330,000. Rappleye paid approximately one half of the purchase price. Rappleye and Hodges took title to the Branson Property as joint tenants, and the warranty deed was recorded in the Taney County, Missouri, Recorder's Office on January 12, 1993. The next month, Rappleye and Hodges formed a general partnership in Missouri, in which each owned a one-half interest, and conducted business as Branson Lake Resort.

¶3 On June 15, 1993, this court resolved the appeal and cross-appeal from the divorce decree and remanded for resolution of issues not relevant to this appeal. The trial court then scheduled a pretrial conference for August 23, 1993, and a trial date of November 22, 1993.

¶4 Meanwhile, on September 17, 1993, Rappleye executed a quitclaim deed, which transferred his ownership interest in the Branson Property to Hodges. The deed was subsequently recorded in the Taney County Recorder's Office. No action was taken affecting the general partnership as such. On October 18, 1993, Johnson filed a motion for prejudgment writ of attachment directed at any nonexempt real property and personal property owned by Rappleye. Rappleye objected to Johnson's motion, stating that he lived at a resort in Missouri where he did maintenance work in exchange for housing. He failed to disclose that he and his wife, Hodges, purchased the property approximately one year earlier; that a month prior he had transferred his one-half interest in the property to Hodges, who now owned the entire Branson Property; and that he had a partnership interest in Branson Lake Resort.

¶5 On October 29, 1993, a hearing was held, and the trial court entered the requested prejudgment writ of attachment. Additionally, Rappleye's counsel informed the court that he had just learned that Rappleye

had recently transferred some property,[1] prompting both parties to request a continuance pending discovery of the facts surrounding this transfer. A new trial date was set for March 23, 1994.

¶ 6 Also on October 29, 1993, Rappleye and Hodges filed for divorce in Taney County, Missouri. On December 3, 1993, Rappleye and Hodges filed a marital settlement and separation agreement, in which they represented they had not acquired any property during the course of their marriage. Additionally, they claimed that Rappleye had a premarital worth of only $506. On December 23, 1993, Hodges, under the name "Linda Jean Rappleye," transferred the Branson Property by warranty deed to herself as "Linda Hodges." On or about January 6, 1994, the Rappleye–Hodges divorce decree was entered in Taney County. Nonetheless, Hodges and Rappleye continued to reside together throughout the trial on remand and subsequent bankruptcy proceedings, all the while concealing their divorce and continually representing themselves as a married couple to their family, friends, employers, religious leaders, and the Internal Revenue Service.

¶ 7 The remand trial was held on March 23, 1994. As part of the ensuing Rappleye–Johnson final divorce decree, the trial court awarded Johnson a judgment against Rappleye in the amount of $216,011.47.[2] At the remand trial, Rappleye testified under oath that he had lost in excess of $200,000 in the stock market between 1992 and 1993 and that he had no additional assets other than the Timpanogos Property. Rappleye did not disclose to the trial court the purchase and subsequent transfer of the Branson Property when discussing his assets at the remand trial. Ultimately, the trial court voided Rappleye's transfer of the Timpanogos Property, finding that it was made with the intent of defrauding Johnson.

¶ 8 On February 10, 1995, Rappleye filed for bankruptcy in Missouri. Rappleye submitted to the bankruptcy court a statement of financial affairs, in which he claimed total assets of $356.17, consisting entirely of exempt property. Rappleye claimed he incurred stock losses in 1992 and 1993 totaling $228,884. Rappleye failed to disclose to the bankruptcy court his partnership interest in Branson Lake Resort and the transfer of his interest in the Branson Property to Hodges.

¶ 9 On May 10, 1995, Hodges sold the Branson Property for approximately $440,000. All proceeds from the sale went into an account in Hodges's name. Also in May of 1995, Johnson filed a complaint in the bankruptcy court to determine the dischargeability of Rappleye's judgment debt to her pursuant to their final divorce decree. A trial was held by the bankruptcy court in February 1996, in which Rappleye testified under oath that he had lost all of his assets on the stock market, leaving him with only minimal exempt property. On May 28, 1997, the bankruptcy court concluded that Rappleye's debt to Johnson, owed by reason of the $216,011.47 judgment, was nondischargeable.[3]

¶ 10 On April 27, 2001, Johnson learned of the existence of Rappleye and Hodges's Branson Lake Resort general partnership and that Rappleye had previously owned a

---

1. On October 7, 1993, Rappleye transferred his ownership in real property located in Midway, Utah (the Timpanogos Property) by quitclaim deed to his son. The quitclaim deed was recorded in the Wasatch County Recorder's Office on October 28, 1993. Although this property conveyance is not at issue in the present appeal, it is relevant in discussing Rappleye's continued concealment of his ownership and subsequent conveyance of the Branson Property. At the October 29, 1993 hearing, although the transfer of the Timpanogos Property was disclosed, nothing was said of Rappleye's recent Branson Property conveyance.

2. The judgment included an award of 50% of the value of the Timberline Hardware Store that Rappleye and Johnson had previously owned. The store was sold in 1988, and Rappleye had continuously retained exclusive control over all proceeds from the sale.

3. Furthermore, the bankruptcy court stated that Rappleye's "previous lack of honesty and deceptive actions reflect on his credibility" and that he "claims to be above the law, a state of mind which is consistent with his previous actions, such as making fraudulent transfers, dissipating assets despite the judge's order, and skimming profits from his business without disclosing the hidden funds either to his spouse or the tax authorities."

one-half interest in the Branson Property. On June 15, 2001, Johnson filed a motion in supplemental proceedings and obtained an order directing Rappleye to appear to answer questions regarding his assets and restraining him from disposing of any of his nonexempt property until satisfaction of his obligation to Johnson. On July 9, 2001, the trial court issued a writ of execution covering all of Rappleye's nonexempt property.

¶ 11 A hearing on Johnson's motion was scheduled for the next month, but Rappleye failed to appear. Consequently, the trial court issued an order to show cause. Rappleye appeared at the hearing, following which an additional writ of execution was issued, the praecipe of which listed four investment accounts. Two of these accounts were held in Hodges's name, at least one of which contains the proceeds from the sale of the Branson Property. Rappleye objected and filed a request for hearing, arguing that he had no interest in the accounts and, therefore, Johnson's execution was invalid.

¶ 12 An evidentiary hearing was held on March 6, 2002, in which Johnson proved to the trial court's satisfaction that Rappleye fraudulently transferred his interest in the Branson Property to Hodges in order to conceal it from Johnson. In its memorandum decision, issued April 29, 2002, the trial court found that Johnson "exercised due diligence at all times in an attempt to discover Rappleye's interest in the Branson Lake Property" and that "she could not have discovered the facts forming the basis of her cause of action until April of 2001." The trial court also determined that "[t]he fraudulent concealment [variant] of the common law discovery rule ... applies ... since Rappleye took affirmative steps to conceal [Johnson's] cause of action from 1993 to April, 2001." Therefore, Johnson's motion and writs of execution "were timely and well within one year of [Johnson's] discovery of her cause of action or claim to relief." The trial court calculated Rappleye's total interest in the Branson Property proceeds to be 48.39 percent and held that Johnson was entitled to execute on Rappleye's interest in the proceeds up to the amount Rappleye owed her

as a result of their divorce decree and related judgment. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

¶ 13 Rappleye argues that Johnson's cause of action is barred by the Utah Fraudulent Transfer Act's expressed statute of limitations and discovery rule. *See* Utah Code Ann. § 25–6–10(1) (Supp.2003). Rappleye contends that the trial court erred in applying the fraudulent concealment prong of the generally applicable discovery rule to determine when, under the Utah Fraudulent Transfer Act, Johnson should be deemed to have discovered his fraudulent transfer. "The applicability of a statute of limitations and the applicability of the discovery rule are questions of law, which we review for correctness." *Spears v. Warr*, 2002 UT 24,¶ 32, 44 P.3d 742. However, the question of precisely when a person reasonably should know that he or she has suffered a legal injury turns on questions of fact and this subsidiary determination is reviewed under the clearly erroneous standard. *See id.* Therefore, "we review for correctness, incorporating a clearly erroneous standard of review for the subsidiary factual determination of when the plaintiff[ ] should have known of [her] alleged legal injuries." *Id.*

¶ 14 Rappleye also challenges the trial court's factual findings to the effect that Johnson was not on actual or constructive notice of Rappleye's Branson Property transfer until 2001. "We apply a deferential standard of review to the district court's findings of fact, repudiating them only if they are clearly erroneous." *Utah Dep't of Transp. v. G. Kay, Inc.*, 2003 UT 40,¶ 5, 78 P.3d 612. *See* Utah R. Civ. P. 52(a).

¶ 15 Next, Rappleye argues that the trial court had no jurisdiction to attach the proceeds from the sale of the Branson Property, or execute thereon, because they are held in an account in Hodges's name. "Jurisdictional questions are ... reviewed for correctness." *State v. Finlayson*, 2004 UT 10,¶ 5, 84 P.3d 1193. "[W]e afford no degree of deference to a trial judge's determination of the law." *United States Fuel Co.*

*v. Huntington–Cleveland Irrigation Co.,* 2003 UT 49,¶ 9, 79 P.3d 945.

¶ 16 Finally, Rappleye asserts that the trial court incorrectly calculated the parties' interests in the proceeds from the sale of the Branson Property and failed to give full faith and credit to the Rappleye–Hodges divorce decree. For reasons hereafter explained, we have no occasion to resolve these last two contentions.

## ANALYSIS

### A. The Discovery Rule

¶ 17 Rappleye does not seriously dispute that the transfer of his interest in the Branson Property to Hodges was for the purpose of putting it beyond Johnson's reach as she endeavored to enforce her judgment against him. The primary issue in this appeal is whether the statute of limitations barred Johnson's enforcement efforts. The property conveyance at issue occurred on September 17, 1993, when Rappleye transferred his ownership interest in the Branson Property to Hodges, without consideration. Johnson claims to have learned of this transfer only in April of 2001, and she promptly filed a motion and order in supplemental proceedings to question Rappleye about his assets and prevent him from disposing of any nonexempt property in violation of their divorce decree. Conceding that he was not entirely forthright in disclosing his machinations, Rappleye argues that evidence from the 1994 remand trial and the 1996 bankruptcy trial nonetheless put Johnson on notice well before 2001 of his interest in the Branson Property and its transfer. According to Rappleye, because Johnson was aware of the Branson Property conveyance earlier than she admits, her claim should have been barred for failure to timely file it.

¶ 18 Johnson alleges, and Rappleye does not dispute, that the applicable statute of limitations is contained in the Utah Fraudulent Transfer Act (UFTA), Utah Code Ann. § 25–6–10(1) (Supp.2003).[4] What the parties

do disagree about is when the statute of limitations began to run and whether certain aspects of the common law discovery rule should have been applied even though UFTA contains an express discovery rule of its own. Rappleye argues that the trial court was incorrect when it applied doctrines that have developed under the common law discovery rule to determine when the statute of limitations was triggered.

¶ 19 " 'Generally, a cause of action accrues upon the happening of the last event necessary to complete the cause of action.' " *Spears v. Warr,* 2002 UT 24,¶ 33, 44 P.3d 742 (quoting *Berenda v. Langford,* 914 P.2d 45, 50 (Utah 1996)) (other internal quotations and citation omitted). However, the discovery rule is an exception to this general rule. "In certain instances ... the discovery rule tolls the limitations period until facts forming the basis for the cause of action are discovered," *Spears,* 2002 UT 24 at ¶ 33, 44 P.3d 742, or in the exercise of reasonable diligence, should have been discovered. *See Jensen v. IHC Hosps., Inc.,* 2003 UT 51,¶ 61, 82 P.3d 1076.

¶ 20 The three instances when the common law discovery rule applies are "when mandated by statute, when a defendant has concealed a plaintiff's cause of action, or when exceptional circumstances exist." *Berenda,* 914 P.2d at 51. At least the first two are implicated in this appeal. The second instance, otherwise known as the fraudulent concealment discovery rule, is applied "when a plaintiff alleges that a defendant took affirmative steps to conceal the plaintiff's cause of action." *Id.* In such cases, plaintiffs can extend the time when the statute of limitations starts running "by making a prima facie showing of fraudulent concealment and then demonstrating that given the defendant's actions, a reasonable plaintiff would not have discovered the claim earlier." *Id.* This "inquiry requires balancing the reasonableness of the plaintiff in pursuing its claim against the defendant's affirmative actions to conceal the plaintiff's cause of action." *Id.* at 51 n. 2.

4. "As a convenience to the reader, and because the provisions in effect at the relevant times do not differ materially from the statutory provisions currently in effect, we cite to the most recent statutory codifications throughout this opinion, unless otherwise noted." *State v. Davis,* 965 P.2d 525, 527 n. 1 (Utah Ct.App.1998), *cert. denied,* 982 P.2d 88 (Utah 1999).

*See Vincent v. Salt Lake County,* 583 P.2d 105, 107 (Utah 1978) (concluding that reasonable reliance on defendant's misrepresentations tolled statute of limitations until discovery of cause of action).

¶ 21 Concerning the first instance, many statutes incorporate an articulated discovery rule within their limitations provisions. The statute at issue in this case is UFTA, which has such a discovery rule:

> A claim for relief or cause of action regarding a fraudulent transfer or obligation under this chapter is extinguished unless action is brought: (1) under Subsection 25–6–5(1)(a), within *four years* after the transfer was made or the obligation was incurred or, if later, within *one year* after the transfer or obligation was or could reasonably have been discovered by the claimant. . . .

Utah Code Ann. § 25–6–10(1) (Supp.2003) (emphasis added).

¶ 22 Rappleye asserts that this statutory discovery rule applies and, because it says nothing about fraudulent concealment, such concealment is irrelevant in fraudulent transfer cases. Rappleye contends that, under the plain terms of UFTA, it is clear that the transfer "was or could reasonably have been discovered by [Johnson]" as early as 1994 or as late as 1996. Therefore, her claim should be barred by UFTA's one-year discovery rule because it was not filed until 2001. In contrast, the trial court found that because Rappleye took affirmative steps to conceal his interest in the Branson Property, Johnson could not have discovered the claim earlier. Johnson contends, and the trial court agreed, that the common law's fraudulent concealment discovery rule is applicable in addition to UFTA's stated discovery rule. The trial court applied the fraudulent concealment discovery rule to determine when Johnson should have discovered Rappleye's conveyance and then applied UFTA's discovery rule deadline to determine if Johnson filed her claim within one year of that date. Because Johnson filed her motion within one

year of her discovery, the trial court determined her claim was not barred by UFTA's statute of limitations.

¶ 23 Consistent with the trial court's approach, the Utah Supreme Court has noted that "a statutory discovery rule is only one rationale for invoking the discovery rule." *Selvage v. J.J. Johnson & Assocs.,* 910 P.2d 1252, 1259 (Utah Ct.App.1996). In *Hill v. Allred,* 2001 UT 16, 28 P.3d 1271, the Court recognized the difference "between situations where there [are] no allegations that defendant[ ] engaged in acts of concealment . . . and those in which 'a plaintiff alleges that a defendant took affirmative steps to conceal a plaintiff's cause of action.' " *Id.* at ¶ 17 (quoting *Berenda,* 914 P.2d at 51). *Hill* characterized the "alleged concealment [as] critical to the statute of limitations question." *Id.* at ¶ 16.

¶ 24 In *Berenda,* the Utah Supreme Court applied the fraudulent concealment discovery rule even though the applicable statute, Utah Code Ann. § 78–12–27 (Supp.2003),[5] by its own terms contained a discovery rule. *See* 914 P.2d at 56. Section 78–12–27 states that the statute of limitations "does not begin to run until 'the discovery, by the aggrieved party, of the facts upon which . . . the liability accrued.' " *Id.* (quoting Utah Code Ann. § 78–12–27). In *Berenda,* the Court's application of the fraudulent concealment discovery rule suggests that the common law discovery rule may properly be applied in appropriate cases, even though the statute at issue contains its own discovery rule which says nothing about fraudulent concealment.

¶ 25 Indeed, in *Jensen v. IHC Hospitals, Inc.,* 2003 UT 51, 82 P.3d 1076, the Utah Supreme Court explained:

> Merely because a statute incorporates a discovery rule does not mean that the common law fraudulent concealment exception also cannot be invoked. This is illustrated by *Berenda v. Langford,* 914 P.2d 45, 51–52 (Utah 1996), wherein we noted that the express terms of a statute

5. It is not clear from reading *Berenda v. Langford,* 914 P.2d 45 (Utah 1996), which version of the statute the Court referred to. However, the language of the statute quoted in the case is the same as the statute's language in the 2003 version. Therefore, we cite to the 2003 version of Utah Code Ann. § 78–12–27.

mandated application of the discovery rule, but we nevertheless applied "the fraudulent concealment version of the discovery rule" to determine when the plaintiff discovered the facts constituting the cause of action. *Jensen*, 2003 UT 51 at ¶ 76, 82 P.3d 1076. Accordingly, we hold that, despite section 25–6–10(1)'s incorporated discovery rule, which omits any reference to fraudulent concealment, the common law fraudulent concealment discovery rule can still be applied to determine when the underlying cause of action should have been discovered,[6] which would trigger the start of the limitations period. *See id.* The trial court correctly concluded that "[t]he fraudulent concealment [prong] of the common law discovery rule ... applies ... since Rappleye took affirmative steps to conceal [Johnson's] cause of action." Having made this determination, the court found that "the statute of limitations was tolled until April of 2001" and Johnson "properly commenced this action under § 25–6–10(1) within one year of April of 2001."

## B. Actual Notice

¶ 26 Rappleye challenges the trial court's factual finding that Johnson was not on actual notice of the 1993 quitclaim deed prior to April 2001. Rappleye argues that Johnson was aware of his interest in the Branson Property prior to 2001, and as a result, the statute of limitations was triggered much earlier and barred Johnson's action.

■■■■■ ¶ 27 Rule 52(a) provides that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." Utah R. Civ. P. 52(a). To challenge a trial court's findings of fact, "[t]he challenging party must marshal all relevant evidence presented at trial which tends to support the findings and demonstrate why the findings are clearly erroneous." *West Valley City v. Majestic Inv. Co.,*

818 P.2d 1311, 1313 (Utah Ct.App.1991) (emphasis omitted). The trial court's findings will not be overturned unless they "are 'so lacking in support as to be against the clear weight of the evidence, thus making them clearly erroneous.'" *Id.* at 1315 (quoting *Mountain States Broad. Co. v. Neale*, 783 P.2d 551, 553 (Utah Ct.App.1989)) (other internal quotations and citations omitted).

■■■ ¶ 28 Although Rappleye challenges the trial court's findings of fact to the effect that Johnson was not on actual notice of the fraudulent conveyance until April of 2001, he did not properly marshal the evidence in *support* of the trial court's findings. *See West Valley City*, 818 P.2d at 1315 ("[T]he challenger must present, in comprehensive and fastidious order, every scrap of competent evidence introduced at trial which *supports* the very findings the appellant resists.") (emphasis in original). Instead, his brief focuses on the evidence in support of his argument, i.e., the evidence that undercuts the findings. Because Rappleye failed to demonstrate how the evidence supporting the findings was legally insufficient, we accept the trial court's factual findings to the effect that Johnson was not on actual notice of the fraudulent transfer prior to 2001.

## C. Constructive Notice

¶ 29 Rappleye argues that evidence at both the 1994 trial on remand and the 1996 bankruptcy trial at least put Johnson on constructive notice of the 1993 quitclaim deed. Rappleye argues that at both trials Johnson learned of the existence of the Branson Property and this should have prompted further inquiry on her part, which would have eventually revealed Rappleye's name in the Branson Property's chain of title. The relevant factual findings have not been properly challenged, as Rappleye again failed to marshal the evidence supporting the pertinent findings. *See West Valley City v. Majestic Inv.*

6. The parties, the trial court, and the cited Utah Supreme Court precedents analyze the question primarily in terms of the fraudulent concealment rule co-existing alongside any expressed statutory discovery rule that is applicable. We note the likelihood that the result we reach in this case would be the same even if we were to apply only the discovery rule articulated in section 25–6–10(1), for surely a defendant's efforts to fraudulently conceal the accrual of a fraudulent transfer cause of action would be a most germane consideration in determining when "the transfer ... could reasonably have been discovered by the claimant." Utah Code Ann. § 25–6–10(1) (Supp. 2003).

*Co.,* 818 P.2d 1311, 1315 (Utah Ct.App.1991). To the extent Rappleye takes issue with the trial court's legal conclusions, his argument is also unavailing.

¶ 30 "Constructive notice" is "where information or knowledge of a fact is imputed to a person by law 'because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.'" *In re Discipline of Sonnenreich,* 2004 UT 3, ¶ 22 n. 9, 86 P.3d 712 (quoting Black's Law Dictionary 733 (6th ed.1991)). Rappleye suggests that *Baldwin v. Burton,* 850 P.2d 1188 (Utah 1993), is factually akin to this case in that both cases involve the issue of whether a judgment creditor was on constructive notice of a property conveyance because the deed had been recorded.

¶ 31 In *Baldwin,* the defendant conveyed a piece of property to his wife, and, approximately one year later, the plaintiff obtained a judgment against him. *See id.* at 1190. The Utah Supreme Court held that the statute of limitations for fraudulent transfers "begins to run from the time the person entitled to the property knows, or by reasonable diligence and inquiry should know, the relevant facts of the fraud." *Id.* at 1196 (footnote and citation omitted). After the plaintiff obtained the judgment against the defendant, the trial court concluded the plaintiff "should have searched for property" and "[h]ad a search been made, exercising reasonable diligence and proper prudence" the conveyance of property would have been uncovered. *Id.* at 1197. Additionally, the court held that "'[t]he means of knowledge is equivalent to knowledge,'" *id.* at 1196 (citation omitted), and if such an inquiry had been pursued the plaintiff, at the very least, would have discovered the transfer which "should have incited suspicion of fraud." *Id.* at 1197.

¶ 32 However, the Utah Supreme Court recognized in *Baldwin* that "[r]ecording a deed or entering judgment alone is not enough in some instances to apprise a party of the fraudulent nature of a conveyance." *Id.* at 1195. *See Smith v. Edwards,* 81 Utah 244, 17 P.2d 264, 270 (1932) ("Mere constructive notice of the deed by reason of its being filed for record is not notice of the facts

constituting the fraud."). Recently, in *Russell/Packard Development, Inc. v. Carson,* 2003 UT App 316, 78 P.3d 616, *cert. granted,* 84 P.3d 239 (Utah 2004), this court recognized that only "absent concealment" does the statute of limitations begin running upon recordation of a deed. *Id.* at ¶ 14. We specifically held that, "'under our case law the rule is otherwise when a plaintiff alleges that a defendant took affirmative steps to conceal the plaintiff's cause of action.'" *Id.* at ¶ 15 (quoting *Berenda v. Langford,* 914 P.2d 45, 51 (Utah 1996)). "In such a situation, the concealment prong of the discovery rule applies to toll the statute of limitations on the plaintiff's claims, regardless of inquiry or constructive notice." *Russell/Packard,* 2003 UT App 316 at ¶ 15, 78 P.3d 616. "'[U]nder the discovery rule, it is the knowledge of injury which triggers the statutes, not notice of probable or possible injury.'" *Id.* (quoting *Seale v. Gowans,* 923 P.2d 1361, 1365 (Utah 1996)) (other internal quotations and citation omitted). *See also Vincent v. Salt Lake County,* 583 P.2d 105, 107 (Utah 1978) (holding that plaintiff's reasonable reliance on defendant's misrepresentations tolled the statute of limitations until discovery of cause of damage).

¶ 33 Thus, mere recordation of the deeds bearing Rappleye's name was not enough to apprise Johnson of the facts constituting the fraud and "[w]hen questioned further [regarding any interest in the property], Rappleye denied any financial interest in the Branson Property whatsoever." He further dispelled whatever skepticism might otherwise have been triggered by insisting he had lost all of his money in the stock market. Nothing in the record suggests that evidence at the remand trial or at the bankruptcy trial should have put Johnson on constructive notice of Rappleye's fraudulent conveyance in the face of his denials and representations. The trial court correctly concluded that "[w]hile [Johnson] may have been on notice that the Branson Lake property had been *conveyed,* she would not be on notice that the conveyance was *fraudulent* until she had facts to prove that Rappleye had a financial interest in it" notwithstanding his denials and deception. Given the finding

that "[t]his ongoing concealment prevented [Johnson] from discovering the facts forming the basis of her cause of action," we conclude that Rappleye's mere recordation of the deeds was not enough to put Johnson on constructive notice of the fraudulent nature of the conveyance to Hodges.

### D. Jurisdiction Over Hodges's Property

¶ 34 Insisting that "[i]t is undisputed that the [investment] accounts containing the proceeds from the Resort had been in Hodges's name for eight years," Rappleye argues that the trial court did not have jurisdiction to attach and execute on the Branson Property proceeds held in Hodges's investment accounts without making Hodges a party to this proceeding. Rappleye also argues that the trial court failed to adjudicate that a fraudulent transfer did in fact occur with regard to the Branson Property and therefore the trial court had no jurisdiction to attach and execute on approximately one half of the money in Hodges's account since she was not a party to the proceedings.

¶ 35 The latter contention is readily disposed of. In its memorandum decision, the trial court specifically concluded that "[t]his court finds that Defendant's conveyance of his interest in the Branson Resort Property to Hodges in 1993 was fraudulent"[7] and "[h]aving already found that [at least one of the investment accounts] holds the proceeds from the sale of the Branson Resort Property, the court finds that.... Plaintiff may execute up to the amount of her judgment on Defendant's interest in said account."

¶ 36 We now consider the other jurisdictional challenge. Under UFTA, "[i]f a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court orders, may levy execution on the asset transferred or its proceeds." Utah Code Ann. § 25–6–8(2) (Supp.2003). Rule 69(a), Utah Rules of Civil Procedure, provides that "[a] writ of execution is available to a judgment creditor to satisfy a judgment or other order requiring the delivery of property or the payment of money by a judgment debtor." Further, "[t]he court or master may order any property of the judgment debtor, not exempt from execution, in the possession of the judgment debtor or *any other person,* or due to the judgment debtor, to be applied towards the satisfaction of the judgment." Utah R. Civ. P. 69(s) (emphasis added).

¶ 37 To help Johnson collect on her judgment against Rappleye, a writ of execution was issued by the trial court, the praecipe of which listed four investment accounts with a financial institution. One or two of these accounts, even though solely in Hodges's name, holds the proceeds from the sale of the Branson Property. Although debts and credits are appropriate subject matter for writs of attachment, *see* Utah R. Civ. P. 64C(e)(6), and they may be executed upon in the broad sense, "[a] writ of garnishment ... in aid of execution" is the appropriate collection tool when the object is an account held by an institution. Utah R. Civ. P. 64D(a)(ii).

¶ 38 "Garnishment allows a judgment creditor to satisfy a judgment by reaching property owed to the judgment debtor by a third party." *Whitney v. Faulkner,* 2004 UT 52, ¶ 18, 502 Utah Adv. Rep. 43, 95 P.3d 270. *See* Utah R. Civ. P. 64D(a)(iii). "The property subject to garnishment that a writ may be used to levy upon or affect is all the accrued credits, chattels, goods, effects, debts, choses in action, money and other personal property and rights to property of the defendant in the possession of a third person[.]" Utah R. Civ. P. 64D(a)(iii). In a garnishment proceeding, "the garnishee is typically a neutral party to the garnishment proceedings, such as a bank, and merely holds the subject property until a court establishes whether the judgment creditor is entitled to it. However, sometimes a garnishee departs from a neutral position to assert its own claim to the property," *Whitney,* 2004 UT 52 at ¶ 18, 95 P.3d 270, or, as might happen in this case, to assert the

---

**7.** Not only did the trial court specifically find that the conveyance of property was fraudulent, it additionally noted that "Defendant [had] conceded as much before this court." Indeed, at oral argument on appeal, when asked what the purpose of the conveyance from Rappleye to Hodges was, Rappleye's attorney conceded that we should simply deem it to be fraudulent for purposes of this appeal.

rights of its account holder or permit the account holder to do so. If a garnishee does assert ownership claims to the property, Utah Rule of Civil Procedure 64D "establishes a process for resolving competing claims to the property made by the judgment creditor, judgment debtor, and garnishee." *Whitney,* 2004 UT 52 at ¶ 18, 95 P.3d 270. *See* Utah R. Civ. P. 64D(h)-(i). Because the accounts in question represent obligations owed by a financial institution and the accounts stand only in the name of Hodges, garnishment is the appropriate means by which Johnson can seek to secure a portion of the funds in satisfaction of her judgment, while protecting the rights of Hodges and the financial institution, neither of whom was a party to the proceedings culminating in Johnson's judgments and neither of whom is directly bound by the court's determination, as between Rappleye and Johnson, of entitlement to a part of the accounts. Johnson's compliance with the procedures set forth in rule 64D(h)-(i) will provide Hodges with an adequate opportunity to assert any competing claim to the property which she may, in good faith, have.[8]

### E. Rappleye's Final Arguments

■ ¶ 39 Rappleye advances arguments regarding the trial court's failure to give full faith and credit to the Rappleye–Hodges divorce decree as well as the trial court's incorrect determination of the interests of Rappleye and Hodges in the Branson Property. However, because Rappleye failed to cite to any supporting legal authority this court declines to address these arguments.

¶ 40 Our rules mandate that an appellant's brief's "argument shall contain the contentions and reasons of the appellant with respect to the issues presented ... with citations to the authorities[ and] statutes." Utah R.App. P. 24(a)(9). Rappleye neglected to meet his briefing duty under rule 24(a)(9) by failing " 'to provide adequate legal analysis and legal authority in support of [his]

claims,' " and consequently his " 'assertions do not permit appellate review.' " *Snow Flower Homeowners Ass'n v. Snow Flower, Ltd.,* 2001 UT App 207,¶ 14, 31 P.3d 576 (quoting *Burns v. Summerhays,* 927 P.2d 197, 200 (Utah Ct.App.1996)).

■ ¶ 41 "While failure to cite to pertinent authority may not always render an issue inadequately briefed, it does so when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." *State v. Thomas,* 961 P.2d 299, 305 (Utah 1998). *See State v. Wareham,* 772 P.2d 960, 966 (Utah 1989) (refusing to rule on issue where defendant's "brief wholly lack[ed] legal analysis and authority to support his argument"). Therefore, we decline to address Rappleye's final arguments for failure to meet the rule 24(a)(9) briefing requirements.

### CONCLUSION

¶ 42 The trial court correctly determined that the fraudulent concealment discovery rule should be applied to determine when the statute of limitations started to run, notwithstanding that UFTA's incorporated discovery rule makes no mention of the rule. We conclude that Johnson's collection efforts were not barred by UFTA's statute of limitations.

¶ 43 We will not disturb the trial court's findings of fact to the effect that, due to Rappleye's concealment of his interest in the Branson Property, Johnson was not on actual or constructive notice of the 1993 quitclaim deed prior to 2001. We reject Rappleye's jurisdictional arguments. In the absence of any legal authority supporting Rappleye's other arguments, we decline to address them.

¶ 44 We remand the case to the trial court so that Johnson's collection efforts may proceed, noting that the proper means for Johnson to secure Rappleye's interest in the ac-

---

8. If, in fact, a writ of execution can properly be used to directly levy on an account held by a financial institution and standing in the name of a third party, Hodges would still not be without an opportunity to be heard. Under Utah Rule of Civil Procedure 69(h)(1), not only the judgment debtor, but "any other person who owns or claims an interest in the property subject to execution may request a hearing to claim any exemption to the execution, or to challenge the issuance of the writ."

counts standing in Hodges's name is via a writ of garnishment in aid of execution.

¶ 45 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and JAMES Z. DAVIS, Judge.