2010 UT App 294

**Tonda Lynn HAMPTON, Plaintiff and Appellant,**

v.

**PROFESSIONAL TITLE SERVICES and Clay G. Holbrook, Defendants and Appellees.**

**No. 20090942–CA.**

Court of Appeals of Utah.

Oct. 21, 2010.

Tonda Lynn Hampton, Price, Appellant Pro Se.

Justin R. Baer, Salt Lake City, for Appellees.

Before Judges ORME, VOROS, and ROTH.

## MEMORANDUM DECISION

VOROS, Judge:

¶1 Tonda Lynn Hampton challenges the district court's grant of summary judgment in favor of Professional Title Services and Clay G. Holbrook (collectively, Defendants). We affirm on the basis that Hampton's appeal is inadequately briefed. *See* Utah R.App. P. 24(a).

¶2 An adequately briefed argument "contain[s] the contentions and reasons of the appellant with respect to the issues presented ... with citations to the authorities, statutes, and parts of the record relied on." *Id.* R. 24(a)(9). " 'Implicitly, rule 24(a)(9) requires not just bald citation to authority but development of that authority and reasoned analysis based on that authority.' " *State v. Green*, 2004 UT 76, ¶13, 99 P.3d 820 (quoting *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998)). A reviewing court " 'is not simply a depository in which the appealing party may dump the burden of argument and research.' " *State v. Bishop*, 753 P.2d 439, 450 (Utah 1988) (quoting *Williamson v. Opsahl*, 92 Ill.App.3d 1087, 48 Ill.Dec. 510, 416 N.E.2d 783, 784 (1981)). Accordingly, "we may refuse, sua sponte, to consider inadequately briefed issues." *State v. Lee*, 2006 UT 5, ¶22, 128 P.3d 1179 (citing Utah R.App. P. 24(j)).

¶3 We acknowledge that Hampton here appears pro se. She is therefore entitled to "every consideration that may reasonably be indulged." *Nelson v. Jacobsen*, 669 P.2d 1207, 1213 (Utah 1983) (internal quotation marks omitted). "However, '[a]s a general rule, a party who represents [herself] will be held to the same standard of knowledge and practice as any qualified member of the bar....' " *Allen v. Friel*, 2008 UT 56, ¶11, 194 P.3d 903 (quoting *Nelson*, 669 P.2d at 1213) (first alteration in original). "Further, 'reasonable' indulgence is not unlimited indulgence.... Reasonable considerations do not include ... attempt[ing] to redress the ongoing consequences of the party's decision to function in a capacity for which [s]he is not trained." *Id.* (quoting *Nelson*, 669 P.2d at 1213). Our courts "will not engage in constructing arguments out of whole cloth," even in capital cases. *State v. Lafferty*, 749 P.2d 1239, 1247 n. 5 (Utah 1988).

¶4 Hampton's brief is not close to adequate. The argument portion of her brief is three pages; excluding summary and introduction, it consists only of a bare outline. And the arguments she does advance are difficult to decipher, e.g., "The court improperly created a standard requiring that Plaintiff should have raised fraud in a prior case prevented plaintiff to enter evidence, Therefore, causing Plaintiff to become incompetent,.... The court in this role impermissibly put itself in the position of an assumption."

¶ 5 We agree with the concurrence that Hampton's arguments are "earnestly stated," and her commitment to her position shines through. We also recognize the uncomfortable reality that our system of justice is expensive. While some pro se litigants may have made a "decision to function in a capacity for which [they are] not trained," *see Allen*, 2008 UT 56, ¶ 11, 194 P.3d 903, we understand that many simply cannot afford a lawyer. Nevertheless, our system is designed so that the "appellant must do the heavy lifting," *State v. Robison*, 2006 UT 65, ¶ 21, 147 P.3d 448. We cannot do it even for an earnest pro se litigant. "An appellate court that does the lifting for an appellant distorts [the] fundamental allocation of benefits and burdens." *Id.*

¶ 6 Even granting Hampton every consideration that may reasonably be indulged in light of her pro se status, we affirm on the ground that her brief on appeal is inadequate to enable us to consider the merits of her claims.

¶ 7 I CONCUR: GREGORY K. ORME, Judge.

ROTH, Judge (concurring in the result):

¶ 8 I do not disagree with the majority that Hampton's claims are inadequately briefed. I also agree that it is important for appellate courts to have the ability to refuse to reach the merits of inadequately briefed issues in order to avoid reallocating the burden of persuasion and the initial burden of analysis from the parties to the courts and the commensurate risk of distorting the respective roles of court and litigant. In many, perhaps most, cases of inadequate briefing this ability to decline to reach the merits may not simply be an option but a responsibility, especially where the court would have to take on the role of fortifying one party's otherwise inarticulate or unsupported positions to the detriment of the other party or where the effort involved in sorting out the merits of an inadequately briefed issue would divert scarce appellate resources from cases where the parties have better adhered to the relevant rules. Nevertheless, there are circumstances where an extra effort to discern and analyze the shape of the substantive issues may be worthwhile. I believe there are aspects of this case that arguably locate it at the outer boundaries of that category.

¶ 9 Here, both Defendants and the trial court made the effort to address the merits of Hampton's claims; and Defendants have not raised an inadequate briefing claim on appeal, as they might have, but have again addressed the substance of Hampton's issues at some cost. Hampton herself, as a self-represented party, has made substantial efforts to advance positions that she appears to believe in strongly, though her efforts to articulate and support those positions ultimately fall short of the mark. Given the long history of the litigation in this matter—extending over several cases and many years—and the efforts of the trial court and the parties, I believe it is worth some effort to address at least the core issues that, in my view, would lead to affirming the trial court's decision to grant summary judgment in favor of Defendants. That said, this effort has proved to be considerably more costly than originally anticipated, and to the extent the majority's conclusion is based on an assessment of the relative burdens and benefits of this approach, I agree with it. My analysis is set forth below.

¶ 10 Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). Appellate courts "review a summary judgment determination for correctness, granting no deference to the [district] court's legal conclusions." *Salt Lake Cnty. v. Holliday Water Co.*, 2010 UT 45, ¶ 14, 234 P.3d 1105 (alteration in original) (internal quotation marks omitted).

¶ 11 Hampton filed the complaint in this action on August 14, 2007. In it, she alleged causes of action for negligence, slander of title, fraud, breach of contract, and breach of the covenant of good faith and fair dealing, stemming from Defendants' involvement as a title company in the transfer and subsequent sale of real property.[1] This action is the

1. The exact nature of the relief Hampton sought is unclear. She seemed to be requesting dam-

latest in a series of lawsuits in which Hampton has claimed an interest in certain real property that she asserts she once held jointly with Kim C. Jensen, also known as K.C. Jensen.

¶ 12 In 1999, Hampton filed for divorce from Jensen on the grounds that their relationship amounted to an unsolemnized marriage. In conjunction with that suit, Hampton recorded lis pendens on approximately 4000 acres of real property that she claimed that she and Jensen jointly owned (the 4000 acres). Although Hampton was apparently unaware at that time, this property had been transferred via a 1997 quitclaim deed (the 1997 deed) to Double J Triangle, LLC, a limited liability company controlled by Jensen and in which Hampton had no interest.[2]

¶ 13 At Jensen's request, on January 23, 2002, the district court in the divorce action ordered the sale of approximately 681 acres—one 6.32-acre parcel and a 675-acre parcel (the two parcels)—of the 4000 acres to pay certain debts and encumbrances, with any remaining proceeds to be escrowed in an interest-bearing trust account to be held jointly by Jensen's and Hampton's attorneys until the court could determine the proper distribution (the January 2002 order). The January 2002 order stated that Double J Triangle held the title to the two parcels that it ordered sold. Defendants acted as the closing and escrow agents for that sale, which occurred on January 25, 2002, and, pursuant to the court order, placed the proceeds in the trust account. Ultimately, the trial court in that action determined that Hampton and Jensen did not have an unsolemnized marriage under Utah law and dismissed Hampton's claims for a decree of divorce and a division of assets. The court also released the lis pendens without determining ownership of the remaining 3319 acres (the remaining property).

¶ 14 In the instant action, Hampton's statements of her claims in her brief and in her affidavit supporting her opposition to summary judgment, although earnestly stated, are at times convoluted and vague, making it a challenge to determine with confidence the precise bounds and details of her claims. Nevertheless, I have tried to read her statements as broadly as reasonably possible under the circumstances in order to arrive at an outline of the legal and factual basis for her claims against Defendants and her opposition to their summary judgment motion that permits analysis. *See generally Allen v. Friel,* 2008 UT 56, ¶ 11, 194 P.3d 903 (affording pro se appellant "every consideration that may reasonably be indulged").

¶ 15 Hampton's claims appear to be based, first, on Defendants' involvement in the 1999 recording of the 1997 deed, which she contends divested her of her interest as a joint owner with Jensen in the 4000 acres[3] and, second, on the parties' subsequent attempt to settle certain issues related to the sale of the two parcels. Her allegations of negligence, slander of title, and fraud appear to stem from Defendants' 1999 recording of the 1997 deed and their involvement in the subsequent sale of the property. She claims that the 1999 recording not only wrongfully facilitated the 1997 transfer of the 4000 acres out of her name without her permission and against her interest but also purposely ignored a quitclaim deed, executed and recorded in May 1998, that transferred the 6.32-acre parcel

---

ages for Defendants' alleged wrongdoing, although at times she couched the remedy sought in terms of a request for declaratory judgment.

**2.** The 1997 deed appears to transfer the property from the K.C. Jensen Family Limited Partnership—not from Hampton and Jensen as joint owners—to Double J Triangle. The record does not reveal whether Hampton was an owner of the limited partnership, but for purposes of this appeal, it is assumed that Hampton is correct that the property was held by her and Jensen, either as joint tenants or through the limited partnership.

It is also assumed for purposes of this appeal that the 1997 deed indeed transferred all of the 4000 acres that Hampton claimed she and Jensen owned jointly.

**3.** From Hampton's statements in her complaint and her affidavit, it is apparent that the two parcels and at least some of the remaining property has been sold, but it is unclear whether all of the remaining property has been sold. Except where necessary to adequately explain the claim, I refer only to the divestment of Hampton's interests, which I use to include the loss of any corresponding proceeds if the property was subsequently sold.

back to Jensen and Hampton as joint tenants. Her contractual claims arise from a purported settlement agreement between Hampton and Defendants related to an error in the chain of title that Hampton claims resulted in her being deprived of her share of the proceeds from the sale of the two parcels.

¶ 16 Defendants moved for summary judgment on several grounds: Hampton's claims were barred by res judicata because they had been resolved against her in prior cases; the applicable statutes of limitations had run; the undisputed facts demonstrated that Defendants had not breached any duty to Hampton; and as to her claim that Defendants had breached a settlement agreement, there had been no meeting of the minds on its terms. Hampton filed a memorandum and affidavit opposing summary judgment and generally denying the grounds for Defendants' motion, but she did not set forth any facts that challenged those asserted by Defendants and conceded that they were undisputed. *See generally* Utah R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the pleadings, but the response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). The district court granted summary judgment in Defendants' favor on the negligence, slander of title, and fraud claims because they were filed after the applicable statutes of limitations had expired and because those claims had been resolved against Hampton in prior cases and were therefore barred by the principle of res judicata.[4] The court granted summary judgment to Defendants on the claims related to the alleged settlement agreement because they were based on an oral agreement to

transfer real property and therefore were barred by the statute of frauds.

## I. Statute of Limitations

¶ 17 This analysis begins with a review of the timeliness of Hampton's complaint with regard to her causes of action for negligence, slander of title, and fraud. The "application of a statute of limitations is a question of law, which we review for correctness." *Davis v. Provo City Corp.*, 2008 UT 59, ¶ 9, 193 P.3d 86.

### A. Negligence and Slander of Title

¶ 18 "In general, the statute of limitations begins to run when the cause of action accrues." *Bingham v. Roosevelt City Corp.*, 2010 UT 37, ¶ 56, 235 P.3d 730 (internal quotation marks omitted). A cause of action accrues at the point when a plaintiff could first file and prosecute an action to completion. *See DOIT, Inc. v. Touche, Ross, & Co.*, 926 P.2d 835, 843 (Utah 1996).

¶ 19 Claims for negligence and slander of title both have four-year statutes of limitations. *See* Utah Code Ann. § 78B–2–307(3) (2008)[5] ("An action may be brought within four years ... for relief not otherwise provided for by law.");[6] *see also Touche*, 926 P.2d at 842 (stating that negligence claims are governed by the catch-all four-year statute of limitations). In her complaint, Hampton alleges that Professional Title Services, through its agent, Holbrook, committed slander of title in November 1999 by "caus[ing] the Fraudulent Quit Claim [deed] to be recorded." She also alleges that Holbrook was negligent "in connection with undertaking and carrying out" the recording and sale of the two parcels pursuant to the January 2002 order, so as to "cause ... an unlawful inter-

---

4. Because the statute of limitations for each of these claims had expired, I do not consider whether res judicata is an appropriate alternate ground for the trial court's ruling.

5. For the convenience of the reader, all references are to the current version of the Utah Code, which contains the same language as was in effect when Hampton's causes of action arose.

6. Although section 78B–2–307(3) is codified within the part titled "Other than Real Proper-

ty," it is well-established that "the catch-all statute of limitations 'applies to all actions for relief that [are] not otherwise covered by *any* other section.'" *Nolan v. Hoopiiaina (In re Hoopiiaina Trust)*, 2006 UT 53, ¶ 23, 144 P.3d 1129 (alteration in original) (emphasis added) (quoting *Branting v. Salt Lake City*, 47 Utah 296, 153 P. 995, 1001 (1915)); *cf. Davis v. Provo City Corp.*, 2008 UT 59, ¶¶ 1, 18, 193 P.3d 86 (holding that the catch-all four-year statute of limitations applies to actions for illegal annexation of real property).

ference with Hampton's lawful recorded titled interest of Real Property." While it appears that her slander of title claim accrued no later than the time of the November 1999 recording that purportedly divested her of title in the 4000 acres, the trial court determined that both claims against Defendants accrued, at the latest, by January 25, 2002, when Defendants acted as closing agents for the sale of the two parcels sold in accordance with the January 2002 order, which itself had provided her with the information that the two parcels were no longer titled in her name. Hampton has identified no other date on which the claims might have accrued, although she does contend that she had no notice of her claims until later. Therefore, regardless of which date—November 1999 or January 2002—applies, the statutes of limitations expired well before Hampton filed the complaint in this action in August 2007, unless the time was tolled.

¶ 20 Hampton claims that the statutes of limitations should have been tolled until she discovered the negligence and slander of title causes of action because Defendants concealed from her the facts forming the basis of her claims.[7] Such a claim is governed by the fraudulent concealment prong of the equitable discovery rule.[8] Fraudulent concealment itself, however, does not automatically toll the statute of limitations until the plaintiff's discovery of the claim. *See Russell Packard Dev., Inc. v. Carson,* 2005 UT 14, ¶ 26, 108 P.3d 741. Rather, to invoke the rule's protections, "a plaintiff must demonstrate that, given the defendant's actions, a reasonable plaintiff would not have brought suit within the statutory period." *Id.* (internal quotation marks omitted) (observing that the rule has its "genesis in estoppel" and placing the burden on the plaintiff to demonstrate that a defendant should be barred from asserting the statute of limitations as a defense because the defendant has affirmatively acted to conceal wrongdoing). The trial court concluded that there was no dispute that Hampton was aware, or should have been aware, of the facts forming the basis of her negligence and slander of title claims by the end of January 2002. Hampton challenges this conclusion on the basis that the district court wrongly rejected her claim that the statute of limitations had been tolled by Defendants' fraudulent concealment of their actions and wrongly refused to allow her to present evidence to support that contention. Hampton

---

7. Ordinarily, consideration of whether the discovery rule applies is reviewed as a question of law, with deference to the trial court's subsidiary determination of when the cause of action should have been discovered. *See Rappleye v. Rappleye,* 2004 UT App 290, ¶ 13, 99 P.3d 348. Because this appeal is from a summary judgment disposition, however, the appropriate legal standard is whether Hampton raised an issue of material fact to preclude judgment as a matter of law. *See generally* Utah R. Civ. P. 56(c), (e) (requiring the nonmoving party to set forth specific facts demonstrating that there is an issue for trial to survive summary judgment).

8. Before the Utah Supreme Court's decision in *Russell Packard Development, Inc. v. Carson,* 2005 UT 14, 108 P.3d 741, the rule governing the tolling of a statute of limitations was referred to as the common law discovery rule or the discovery rule. In *Russell Packard,* the Utah Supreme Court consolidated and clarified what had previously been a somewhat unclear, and consequently, inconsistently applied, discovery rule standard. *See id.* ¶¶ 19, 21. Under this newly-refined statement of the law, there are two classes of cases in which a discovery rule applies. *See id.* ¶ 21. A "statutory discovery rule" applies to cases where the statute of limitations

itself provides that a cause of action does not accrue until it is discovered by the plaintiff. *Id.* (using the example of a "three-year statute of limitations governing claims based on fraud or mistake, which provides that a cause of action will not accrue until the discovery by the aggrieved party of the facts constituting the fraud or mistake" (internal quotation marks omitted)). The "equitable discovery rule" applies in the second class of cases where the statute of limitations itself contains no statutory discovery rule but certain conditions are present which call for the tolling of the statute of limitations on an equitable basis. *See id.* ¶ 24. This equitable discovery rule applies in two circumstances:

> (1) where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct, and (2) where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action.

*Id.* ¶ 25 (internal quotation marks omitted). Hampton has not stated any basis for application of the exceptional circumstances prong, and my analysis therefore proceeds under the fraudulent concealment prong.

has not provided a persuasive basis for this claim of error.

¶ 21 First, Hampton failed to proffer any specific evidence of Defendants' concealment that she would have been prepared to present to the trial court had it permitted her to do so. Other than making a bare assertion that Defendants fraudulently concealed her claims, she identifies no affirmative action that Defendants took to conceal their involvement in the transfer of the 4000 acres or the sale of the two parcels. *See generally id.* ¶¶ 25–26 (requiring a plaintiff to present evidence of affirmative actions by a defendant to conceal or mislead the plaintiff regarding her causes of action to toll the statute of limitations). Indeed, the 1997 deed itself belies a claim that Defendants had acted to conceal their role: the deed shows on its face that it was recorded at the request of Defendant Professional Title Services, a company that Hampton and Jensen, separately and together, had used between 1993 and 1999 as their title company for a number of transactions. Furthermore, Hampton does not contend that she lacked knowledge of Defendants' role in the 2002 sale.[9] In addition to failing to identify any specific actions that Defendants took to conceal any aspect of the 1997 transfer of the property, the 2002 sale of the two parcels, or their role in either transaction, Hampton does not explain why she could not have discovered the underlying facts earlier. Bare allegations of fraudulent concealment are not enough to survive summary judgment based on the expiration of the statute of limitations. *See* Utah R. Civ. P. 56(e) (stating that a party opposing summary judgment cannot rely on mere allegations or denials but instead must present facts that demonstrate an issue of material fact); *Reagan Outdoor Adver. v. Lundgren,* 692 P.2d 776, 779 (Utah 1984) ("The allegations of a pleading or factual conclusion of an affidavit are insufficient to raise a genuine issue of fact.").

¶ 22 In contrast, the district court's conclusion that Hampton was—or should have been—aware of her claims by the end of January 2002 is supported by the record. Hampton's negligence and slander of title claims arise from the 1999 recording of the 1997 deed and Defendants' involvement as title company in the January 2002 sale. Hampton alleges that the 1997 deed transferred property jointly owned by her and Jensen to Double J Triangle, a limited liability company that Jensen controlled, thereby divesting her of her interest in the 4000 acres. The trial court in the divorce action informed Hampton that Double J Triangle held title to the two parcels when it ordered their sale in January 2002. The discovery, in the midst of a contested divorce action, that a significant portion of the property that she believed she and Jensen owned in common was no longer held in her name provided sufficient information to prompt a reasonable person to inquire as to the status of title to the remaining property. *See Russell Packard,* 2005 UT 14, ¶ 38, 108 P.3d 741 (allowing a trial court to deem a plaintiff to have constructive notice of a claim when she has "notice to inquire into a defendant's wrongdoing [that] would have, with due diligence, [caused her to] discover[ ] the facts forming the basis for the cause of action despite the defendant's efforts to conceal"). Had Hampton taken the most obvious step to follow up on the divorce court's statement, a visit to the Carbon County Recorder's office, she would quickly have discovered the 1997 deed that was recorded there by Defendants in 1999. *See generally* Utah Code Ann. § 57–3–102 (2000) (stating that deeds recorded "with the appropriate county recorder['s office] impart notice to all persons of their contents").[10]

---

9. In an affidavit supporting Defendants' motion for summary judgment, Holbrook testified that Defendants were hired as closing and escrow agents for the sale of the two parcels in November 2001. Between the hiring and the closing on January 25, 2002, he asserts that he maintained communication with Hampton's attorney in the divorce action. Hampton did not dispute this.

10. Indeed, Hampton knew that landowners and creditors recorded any information regarding real property that they wanted to be available to the public in the county recorder's office where the property is located. That general knowledge was bolstered by her own experience in recording lis pendens in the Carbon County Recorder's Office.

¶ 23 Hampton thus failed to raise a factual question as to whether, "given ... [D]efendant[s'] actions, [she] reasonabl[y] ... [c]ould not have brought suit within the statutory period." *See Russell Packard,* 2005 UT 14, ¶ 26, 108 P.3d 741 (internal quotation marks omitted). Consequently, I would affirm the district court's conclusion that Hampton's negligence and slander of title claims were barred by the statutes of limitations as a matter of law.

## B. Fraud

¶ 24 Hampton's fraud claim, broadly read, appears to relate to Defendants' role in the 1999 recording of the 1997 deed as well as the sale of the two parcels in 2002 and various parcels of the remaining property at subsequent, only vaguely-described dates. Hampton alleges that in connection with the recording and those subsequent sales, Defendants committed fraud or facilitated fraud by others, which resulted in her being divested of an interest in the 4000 acres. An action for fraud is subject to a three-year statute of limitations. *See* Utah Code Ann. § 78B-2-305(3) (Supp.2010). The fraud statute of limitations, however, provides that the period for filing a claim for fraud does not commence until "the discovery by the aggrieved party of the facts constituting fraud." *Id.; see also Russell Packard,* 2005 UT 14, ¶¶ 21-22, 108 P.3d 741 (stating that a "statutory discovery rule" automatically tolls the statute of limitations until the plaintiff discovered or reasonably should have discovered the cause of action). "A plaintiff is deemed to have discovered his action when he has actual knowledge of the fraud 'or by reasonable diligence and inquiry should know, the relevant facts of the fraud perpetrated against him.'" *Colosimo v. Roman Catholic Bishop,* 2007 UT 25, ¶ 17, 156 P.3d 806 (quoting *Baldwin v. Burton,* 850 P.2d 1188, 1196 (Utah 1993)); *see also Baldwin,* 850 P.2d at 1197 ("[I]t is not necessary for a claimant to know every fact about his fraud claim before the statute begins to run.").

¶ 25 As far as can be ascertained from Hampton's statements, the facts underlying the purported fraud occurred sometime between the creation and execution of the deed in 1997 and commencement of litigation against Jensen for a fourth time on April 23, 2004. The district court, giving Hampton the benefit of the latest dates at which discovery could reasonably be deemed to have occurred, concluded that the fraud statute of limitations began to run no later than April 2004 and expired in April 2007, some four months before Hampton filed the complaint in this action.

¶ 26 The district court's reasoning was based upon statements Hampton undisputedly made in two cases against Jensen she filed in December 2002 and April 2004. In December 2002, Hampton filed a complaint against Jensen, together with a lis pendens on the remaining property, alleging that Jensen "ha[d] been depleting, hiding, [and] transferring [real property] out of [Hampton's] name, [f]raudulently." That statement reasonably implies that Hampton was aware of the facts underlying her fraud claim at the time of filing, at least with respect to the remaining property. The trial court appropriately concluded, however, that Hampton's April 2004 complaint included claims relating to the two parcels as well as the remaining property. In that April 2004 complaint, Hampton alleged that "somehow, a Limited Liability Company[, Double J Triangle,] sold [her and Jensen's] Real estate interest" and that she "ha[d] never given any oral or written document to allow any ownership change on [the] approx[imately] 4,000 acre[s]" that she claimed to have jointly owned with Jensen. Hampton has consistently claimed that over the course of their seventeen-year relationship, she and Jensen co-owned approximately 4000 acres, including the two parcels sold in January 2002. Her reference to the transfer of ownership on all 4000 acres therefore necessarily implies that she was aware of a possible fraud with respect to the ownership of the two sold parcels as well as the remaining property that had been the subject of her December 2002 complaint. Therefore, the trial court correctly concluded that based on her undisputed statements in the April 2004 litigation against Jensen, Hampton knew of any alleged fraud as to all the 4000 acres by the date she filed that case.

¶ 27 The undisputed facts also demonstrate that Hampton knew enough at that point to at least prompt an inquiry into Defendants' role in the alleged fraud. *See generally Russell Packard Dev., Inc. v. Carson,* 2005 UT 14, ¶ 21, 108 P.3d 741 (stating that a "statutory discovery rule" tolls the statute of limitations until "a plaintiff either discovered or *should have discovered*" the cause of action (emphasis added)); *Baldwin,* 850 P.2d at 1196–97 (requiring a plaintiff to exercise reasonable diligence in discovering the facts underlying an alleged fraud and observing that had the plaintiffs in that case, after obtaining a judgment lien, searched for property on which to levy, they would have discovered that the property had been transferred, inciting a suspicion of fraud). As discussed above, the divorce court's statement in the January 2002 order that the two parcels were no longer titled in Hampton's name put her on notice that something was amiss with the title to real property that threatened her alleged rights of joint ownership. Given that the 1997 deed—the instrument that Hampton asserts fraudulently transferred the property in which she claimed to have an interest—states on its face that it was recorded at the request of Professional Title Services and that Hampton and Jensen used Professional Title Services as their title agency of choice during that time period, Hampton reasonably should have discovered Defendants' alleged role in the fraud by the time she filed the April 2004 case.

¶ 28 Hampton's contention that Defendants altered certain documents so as to conceal their fraud from her does nothing to change this conclusion. Her affidavit opposing summary judgment states that Defendants "altered and concealed true ownership" of the property in two documents attached to that affidavit: a settlement statement and a real estate purchase contract. But Hampton does not provide any information that explains how the alleged alterations prevented her from discovering her claims. For example, she does not identify the facts that Defendants concealed from her; what actions Defendants took to accomplish any such concealment; when such concealment took place; what part the attached documents played in the concealment; how the alleged acts of concealment caused her to delay filing, or made her unable to file, her claims against Defendants; or how Defendants' actions would have impeded or prevented a reasonable plaintiff from filing her claims within the limitations period. Indeed, the two documents simply identify Double J Triangle as the owner of the property and not Hampton. This appears to be a continuation of, or a reliance upon, the fraud she claims Defendants committed by the 1999 recording of the 1997 deed rather than any act of a new or distinct fraudulent character, and Hampton does not explain how either document deceived her or concealed some wrong committed against her by Defendants. As discussed earlier, statements in the January 2002 order that identified Double J Triangle as the sole record owner of a significant portion of the 4000 acres in which she claimed a joint interest put Hampton on inquiry notice whether her interest in the entire acreage had been divested in some way. Hampton fails to explain how the allegedly altered documents' identification of Double J Triangle as the owner of the 4000 acres created an issue of material fact regarding when she discovered or reasonably should have discovered Defendants' alleged fraud. Thus, the trial court did not err in concluding that there was no material issue of fact regarding whether the statute of limitations for fraud had expired by the time Hampton filed this action.

¶ 29 Because the applicable statutes of limitations had expired, the trial court properly granted summary judgment on the negligence, slander of title, and fraud claims.

## II. Statute of Frauds

¶ 30 The final issue on appeal is whether the court properly entered summary judgment on Hampton's claims for breach of contract and breach of the covenant of good faith and fair dealing. The district court held that Defendants were entitled to judgment on these claims as a matter of law because the contract was unenforceable under the statute of frauds. The "[s]tatute[ ] of frauds [is] intended to bar enforcement of certain agreements that the law requires to be memorialized in writing." *Stangl v. Ernst Home Ctr.,* 948 P.2d 356, 360 (Utah Ct.App.

1997) (internal quotation marks omitted). Pursuant to the statute of frauds, no "interest in real property ... shall be created, granted, assigned, surrendered or declared otherwise than by an act or operation of law, or by deed or conveyance in writing subscribed by the party creating, granting, assigning, surrendering or declaring the same." Utah Code Ann. § 25–5–1 (2007).

¶ 31 Hampton's complaint alleges that she and Holbrook agreed that Hampton would "relinquish her rights" to "6.32 acres for the amount of [$]21,185.47." Hampton further alleges that Defendants "entered into an Oral Contract," in which Defendants would compensate her for "the interest that she lost due to a fraudulent transaction" in exchange for "sign[ing] her total interest [in 675 acres] over to Professional Title Service[s] ... plus another 6.32 acres." At the summary judgment hearing, in response to the district court's questions, Hampton repeatedly confirmed that she and Holbrook, on behalf of Professional Title Services, were negotiating for the sale of her interest in the real property, not simply the terms of a settlement agreement.[11] The statute of frauds prohibits oral agreements for the sale of real property. Thus, the trial court correctly concluded that the oral contract was unenforceable. Because Hampton's claim that Defendants breached the covenant of good faith and fair dealing is premised on the validity of that same contract, it must fail as well. I would therefore affirm the grant of summary judgment as to Hampton's contractual claims.

¶ 32 In summary, I would affirm on the basis that the statute of limitations on Hampton's negligence, slander of title, and fraud claims had expired and that the statute of frauds barred the contractual claims.

---

**11.** Although the alleged agreement between Hampton and Defendants might arguably be characterized as something other than an agreement to transfer an interest in real property, Hampton was insistent at the motion hearing that this was the parties' intent. Under the circumstances, and in the context of a summary judgment motion, it was not error for the trial court to accept Hampton's own repeated characterization of the alleged agreement.